[No. H005297. Sixth Dist. Mar. 7, 1989.]

RAYTHEON COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
RENAULT & HANDLEY EMPLOYEES INVESTMENT
COMPANY et al., Real Parties in Interest.

684

**COUNSEL**

Cooley, Godward, Castro, Huddleson & Tatum, Lloyd R. Day, Jr., Gordon C. Atkinson and Robin J. Seeley for Petitioner.

No appearance for Respondent.

Lawrence A. Hobel, Jeffrey J. Lederman, Mark Fowler, John L. Antracoli and Ware & Freidenrich for Real Parties in Interest.

**OPINION**

**PREMO, J.**—This is a proceeding in mandate. Petitioner Raytheon Company (Raytheon) seeks review of a discovery order of the superior court

which granted the motion of plaintiffs and real parties in interest Renault & Handley Employees Investment Co., Raymond G. Handley, Milla C. Handley, Y. A. Tittle, Minette Tittle, Carolyn Handley Gillen, Jeffrey Handley, and Mary Robins (collectively Renault), to compel production of documents. Raytheon claims these documents are protected by the attorney-client and work product privileges, respectively. In the underlying action, Renault sued Raytheon and other defendants (including Intel Corporation) for contract and tort claims related to the toxic condition of sites located in Mountain View, California. Raytheon and others are alleged to have contributed in varying degrees to this toxic condition. The court ruled that Raytheon must produce certain so-called "circulated documents" because they had been shown to "adversarial" codefendants. Raytheon claimed attorney-client and work product privilege as to these documents, without specifying what privilege applies to each document.

The trial court herein ruled that Raytheon has waived all claims of attorney-client or of work product privilege with respect to documents shown to codefendants or their counsel, and that Raytheon must produce these documents in discovery. However, for reasons we shall state, we believe that (1) the trial court erred in finding waiver on the basis of the Supreme Court decision in *Williamson* v. *Superior Court* (1978) 21 Cal.3d 829 [148 Cal.Rptr. 39, 582 P.2d 126], and (2) the record does not support the trial court's finding of waiver. Accordingly, we shall issue the peremptory writ of mandate directing the court to vacate its ruling and to reconsider the matter in accordance with this opinion.

### RECORD

The plaintiffs first filed this lawsuit in August 1984. The United States Environmental Protective Agency (EPA) began an investigation of the contaminated site in August 1985. Raytheon, Intel, and others entered into an administrative consent order on August 15, 1985. That date pinpoints the beginning of any cooperative administrative investigation.

The documents ordered to be disclosed were primarily generated during the federal administrative investigation. Raytheon describes the documents which it claims are privileged as follows: "Correspondence, memoranda, reports and other documents dated variously 1984 to 1988 prepared by Fairchild Semiconductor Corporation, its counsel and/or its consultants, Intel Corporation, its counsel and/or its consultants, or Raytheon, its counsel and/or its consultants, which were prepared and distributed among such parties and counsel at the direction of counsel."

Raytheon seeks writ review. It contends that the so-called circulated documents were draft reports and related correspondence generated during

an administrative investigation of the toxic condition of the properties. Further, Raytheon argues that in this administrative investigation, Raytheon, Fairchild, and Intel were not adversaries but were cooperating jointly with the investigating agencies so as to expedite remedial measures most efficiently. Accordingly, Raytheon says it waived no applicable privilege by circulating these documents to codefendants or their counsel during the process, since it disclosed the material only to cooperating nonadversarial coparties. Raytheon contends that it would be against public policy to find waiver under these circumstances, for if privilege were waived by joint sharing in such cases, then in the future it would be difficult to secure a jointly cooperative effort to remedy toxic contamination.

The trial court based its ruling exclusively on *Williamson* v. *Superior Court, supra,* 21 Cal.3d 829.

## DISCUSSION

■ Despite the general rule disfavoring writ review of discovery matters, writ review is appropriate when petitioner seeks relief from an order which may undermine a privilege. (*Sav-On Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739]; *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 336 [107 Cal.Rptr. 309, 508 P.2d 309].) As the court explains in *Roberts,* interlocutory review by writ is the only adequate remedy in such cases, since once privileged matter has been disclosed there is no way to undo the harm which consists in the very disclosure. (*Roberts, supra,* at p. 336.) Further, the attorney-client privilege deserves a particularly high degree of protection in this regard since it is a legislatively created privilege protecting important public policy interests, particularly the confidential relationship of attorney and client and their freedom to discuss matters in confidence. (See e.g. *Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591, 599 [208 Cal.Rptr. 886, 691 P.2d 642].)

■ Contrary to the ruling below, the decision in *Williamson* does not control this matter. In *Williamson,* one defendant showed a codefendant an expert opinion highly critical of the latter, and codefendant agreed to indemnify the first defendant in return for suppression of that report. *Williamson* ordered disclosure, holding it was against public policy for one defendant to agree with an adversarial codefendant to suppress the results of an investigation. The decision expressly did not reach the issue of waiver by disclosure to an adversarial codefendant. (21 Cal.3d at p. 837, fn. 4.) The case turned on the narrow public policy ground that a bargain to suppress evidence is disfavored for obvious reasons. Those facts do not fit this case, and the issue here is simply whether a waiver occurs when adversaries voluntarily share otherwise privileged information.

Renault claims that Raytheon and the codefendants have always been adversaries, both regarding their positions in the administrative investigation and their roles in the litigation involved here. Renault contends that during the investigation, it was always in the interests of each potential toxic contaminator to shift as much as possible of the percentage of blame to other parties because the governing law provides for contribution based on the degree of fault. Moreover, in the litigation, first filed in August 1984, Raytheon and other defendants were always potential adversaries in the sense that it would be in the interests of each to shift to the other responsibility for the toxic condition. Furthermore, the defendants became official adversaries when they formally answered the fourth amended complaint, with each defendant disclaiming responsibility for the soil and groundwater contamination of the lots in question and seeking to point the finger of blame at the other.

Defendants' answers were not actually filed until late in 1988, a fact from which Raytheon argues that the codefendants were in no sense adversaries when the circulated documents were generated, during the period 1984 to 1988. However, the postponement in filing the formal answers was solely by virtue of the companies' mutual agreements back in August 1984, tolling the statutes of limitations and postponing prosecution of the litigation. During the period of time between 1984 and 1988, while governmental agencies were investigating the toxic contamination, Raytheon admits it was preparing its defenses against other parties. Renault argues those parties must have included all codefendants. However, Raytheon emphasizes there are no formal cross-claims on file among the defendants.

Plainly some of the circulated material was generated before the date the administrative investigation began. Nevertheless, Raytheon claims commonality of interest with Intel and Fairchild as to all circulated documents, based on alleged joint cooperation during the investigation.

We consider the controlling law regarding waiver of privilege by disclosure. The statute regarding waiver of the attorney-client privilege, Evidence Code section 912, provides that a disclosure in confidence of a privileged communication is not a waiver of the privilege "when such disclosure is reasonably necessary for the accomplishment of the purpose for which the lawyer . . . was consulted . . . ." (Evid. Code, § 912, subd. (d); accord, *Insurance Co. of North America* v. *Superior Court* (1980) 108 Cal.App.3d 758, 771 [166 Cal.Rptr. 880, 14 A.L.R.4th 581].) There appear to be no California cases considering whether common cooperation among defendants, for a purpose other than a common defense of the lawsuit, is a purpose for which the defense lawyers were consulted, within the statute, so that there is no waiver by mutual disclosure of work.

There is no statutory provision governing waiver of work product protection. (Cf. Code Civ. Proc., § 2018.)

The author of the most recent law review article on the subject of "allied party exchange of information" notes the paucity of precedent. (See Comment (1988) 36 UCLA L.Rev. 151.) What little law there is, is federal. The issue of waiver in the federal courts turns on a determination of whether there is commonality of interest among the parties as to whom disclosure occurred. Most of the cases involve either joint defense of criminal cases, albeit by separate counsel, or related prosecutions of antitrust or similar lawsuits by plaintiffs with interests in common. In those factual contexts, the federal courts do not treat joint disclosure as waiver. (An example of the former category, joint defense privilege, is *Hunydee* v. *United States* (9th Cir. 1965) 355 F.2d 183; of the latter, disclosure to plaintiffs with interests in common, is *Schachar* v. *American Academy of Ophthalmology, Inc.* (N.D.Ill. 1985) 106 F.R.D. 187.)

In California, the most recent case addressing waiver of the attorney-client privilege by disclosure holds that the presence of third parties does not destroy confidentiality if the disclosure was reasonably necessary to accomplish the client's purpose in consulting counsel. (*Insurance Co. of North America* v. *Superior Court, supra,* 108 Cal.App.3d at p. 771.) The statutory language, *ante,* is to the same effect. (Evid. Code, § 912, subd. (d).)

Raytheon argues that it was reasonably necessary for it to disclose to Intel or others the material which it was preparing for the EPA, because it was beneficial for all to cooperate in the governmental investigation. Renault responded with at least one reason why the parties' interests may well have been adverse rather than joint, namely, the assessment of liability against the polluters in proportion to fault. However, because the trial court viewed the *Williamson* decision as controlling, it did not consider the record of the parties' dealings in the 1984 to 1988 period in order to determine the factual issue whether mutual disclosures were reasonably necessary to accomplish the purpose for which attorneys were consulted. Accordingly, the record does not support the order to disclose documents claimed to be subject to the attorney-client privilege.

Renault argues that Raytheon had the burden of establishing the existence of the privilege in the trial court. (*Kizer* v. *Sulnick* (1988) 202 Cal.App.3d 431 [248 Cal.Rptr. 712]; *Brown* v. *Superior Court* (1963) 218 Cal.App.2d 430 [32 Cal.Rptr. 527].) Although that proposition is correct in the abstract, here the trial court determined the matter on the issue of waiver by disclosure, believing that result was compelled by the *Williamson*

decision; hence Raytheon was never afforded the opportunity to show that the relationship of the defendants when the documents were generated was such that disclosure was reasonably necessary, within Evidence Code section 912, subdivision (d). The matter must therefore be remanded so that the trial court can consider the issue correctly in light of applicable law. There is no "joint defense privilege" as such in California, but, as we have stated, the issue of waiver must be determined under the statute with respect to the attorney-client privilege, and depends on the necessity for the disclosure.

As for the work product privilege, language in at least one California decision strongly suggests that privilege is not waived except by a disclosure wholly inconsistent with the purpose of the privilege, which is to safeguard the attorney's work product and trial preparation. (See *Fellows v. Superior Court* (1980) 108 Cal.App.3d 55, 65-66 [166 Cal.Rptr. 274]; see also 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 41.2 [work product is waived by disclosure to one with no interest in maintaining its confidentiality]; and see *BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1261 [245 Cal.Rptr. 682].) Normally, disclosure to a litigation adversary would be inconsistent with those policies. But again, because the trial court relied exclusively on inapposite authority, there is no evidence developed in the record by which that court could determine whether work product was here disclosed under circumstances inconsistent with claiming the privilege. There is no detailed description of the nature of the administrative investigation and the various interests each party had at stake during its progress; yet these facts are crucial to determining whether disclosure could reasonably be made with an expectation of confidentiality. The trial court's conclusion that mutual disclosure here constituted waiver rests on no evidentiary basis.

## DISPOSITION

Real parties in interest have been notified that a peremptory writ in the first instance could be issued here, and they have filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of mandate issue as prayed, ordering the respondent court to vacate its order entered on November 17, 1988, insofar as that ruling required production of those documents which are referred to as the "circulated documents" and as to which there is a claim of privilege. The respondent court shall consider petitioner's claims of privilege and real parties' claim of waiver in light of the principles discussed in this opinion. Our

temporary stay order filed on January 5, 1989, shall remain in effect until finality of this opinion. Petitioner is awarded its costs.

Brauer, Acting P. J., and Elia, J., concurred.