Filed 1/8/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| LABOR AND WORKFORCE DEVELOPMENT AGENCY, | |
| Petitioner, | C083180 |
| v. | (Super. Ct. No. 34201680002317) |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| FOWLER PACKING COMPANY, INC., et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS. Writ of Mandate. Granted.

Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Mark R. Beckington and Enrique A. Monagas, Deputy Attorneys General for Petitioner.

No appearance by Respondent.

IRELL & MANELLA, David A. Schwarz and Stephen M. Payne for Real Parties in Interest.

This case involves the delicate balancing of open government principles enshrined in the California Public Records Act (Public Records Act) (Gov. Code, § 6250 et seq.)[1] and the need for confidentiality in the deliberative process of drafting legislation as safeguarded by the deliberative process privilege under section 6255 and as attorney work product under Code of Civil Procedure section 2018.030. A Public Records Act request in this case was made on behalf of Fowler Packing Company, Inc. (Fowler) and Gerawan Farming, Inc. (Gerawan) in response to the 2015 enactment of Assembly Bill 1513 (AB 1513) codified in Labor Code section 226.2 (Stats. 2015, ch. 754, § 5 (2015 - 2016 Reg. Sess.) eff. Jan. 1, 2016). AB 1513 addresses the issue of minimum wages for employees paid on a piece-rate basis (i.e., paid per task) and includes safe-harbor provisions that provide employers with an affirmative defense against wage and hour claims based on piece-work compensation so long as back pay is timely made. (Lab. Code, § 226, subds. (b)-(f).) However, the safe-harbor provisions contained carve-outs that place the safe-harbor provisions out of reach for several California companies including Fowler and Gerawan. (Lab. Code, § 226.2, subds. (g)(2) & (g)(5).) The Public Records Act request sought in pertinent part: "Any and all public records referring or relating to communications between the California Labor & Workforce Development Agency, its officers, and its staff and the United Farm Workers of America regarding AB 1513;" "Any and all public records referring or relating to the statutory carve out for any 'claim asserted in a court pleading filed prior to March 1, 2014,' as codified in AB 1513

---

[1] Undesignated statutory references are to the Government Code.

section 226.2(g)(2)(A);" and, "Any and all public records referring or relating to AB 1513" and Fowler and Gerawan. The responsive documents would necessarily include the identities of parties who communicated confidentially with the California Labor and Workforce Development Agency (Agency) that took the lead in formulating the policies enacted in AB 1513.

The trial court ordered the Agency to produce "an index identifying the author, recipient (if any), general subject matter of the document, and the nature of the exemption claimed" to justify withholding information in response to a request for documents under the Public Records Act. The Agency petitioned for writ relief in this court to prevent disclosure of the identities of the parties with whom the Agency communicated confidentially in formulating AB 1513, the substance of these communications, and communications with the Office of Legislative Counsel (Legislative Counsel) during the drafting process. We granted a stay and issued an alternative writ to allow us to consider the matter. Based on the California Supreme Court's guidance in *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325 (*Times Mirror*), we conclude the trial court's order errs in requiring disclosure of matters protected by the deliberative process and attorney work product privileges. Accordingly, we direct the trial court to vacate its order directing the Agency to produce an index disclosing the author, recipient, and general subject matter of documents generated relating to the process of drafting AB 1513.

FACTUAL AND PROCEDURAL HISTORY

*Passage of AB 1513*

In *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36 (*Gonzalez*), the Second District held that in addition to the piece-rate compensation paid by an automotive repair service, the service's technicians were entitled to separate hourly compensation for time spent waiting for repair work or performing other nonrepair tasks

3

directed by the employer, even though the employer supplemented the technicians' compensation to cover any shortfall between the piece-rate wage and minimum wage rate. (*Id.* at pp. 40-41.) Shortly thereafter, this court held that an employee subject to piece-rate compensation must also be paid for rest periods. (*Bluford v. Safeway Stores, Inc.* (2013) 216 Cal.App.4th 864, 866, 871-873 (*Bluford*).)

In response to *Gonzalez* and *Bluford*, the Governor directed the Agency to take the lead in drafting and enacting legislation to address any penalties California employers should face as well as providing an expedited process by which piece-rate employees would receive years of back wages. The Agency thus assumed a key role in formulating and drafting AB 1513, and in coordinating with the Governor's office and members of the Legislature. In preparing legislative proposals for AB 1513, the Agency communicated with Legislative Counsel. The Agency also sought confidential input from key stakeholders including representatives of business and labor. In a declaration, the Agency's director of legislation explained the need for confidentiality on grounds that "at times a stakeholder's representative would share an opinion or take a negotiating position at odds with the opinions and objectives of the stakeholder's rank-and-file members or of its legislative allies. Indeed, some representatives spoke on behalf of multiple stakeholders, each with potentially divergent views. [If disclosed] these communications would very likely cause retaliation in the form of harassment and ostracization from the representatives' *own* supporters. Or for others, it may cause an attorney or lobbyist to lose clients who come to learn about their agent's private advocacy on a controversial issue."

In 2015, the Legislature enacted AB 1513 that added section 226.2 to the Labor Code. (Stats. 2015, ch. 754, § 5.) Subdivision (a) of Labor Code section 226.2 provides that employers must adhere to specified wage and compensation standards for piece rate employees. Subdivision (b) of that section provides employers with an affirmative

4

defense to enumerated types of claims for underpayment due to a piece-work compensation formula in place between July 1, 2012 to December 31, 2015, provided the employers make timely back payments and take other actions specified in subdivisions (b) through (f) of Labor Code section 226.2.

Subdivision (g) of Labor Code section 226.2 constitutes a carve-out of the safe harbor provisions by making certain employers ineligible for the affirmative defense. The carve-out exempts a handful of companies from the safe-harbor provisions. As pertinent to this case, subdivision (g)(2) of Labor Code section 226.2 "makes Gerawan ineligible to assert the safe harbor as an affirmative defense in a class action suit filed against it by the General Counsel of the United Farm Workers of America (UFW) on February 3, 2014 . . . ." (*Fowler Packing Co. v. Lanier* (9th Cir. 2016) 844 F.3d 809, 813 (*Fowler v. Lanier*), citing *Amaro v. Gerawan Farming, Inc.* (E.D. Cal.) No. 1:14–cv–00147–DAD–SAB.) And subdivision (g)(5) of Labor Code section 226.2 "prevents Fowler from asserting the safe harbor as an affirmative defense in a class action suit filed against it by the UFW on March 17, 2015 . . . ." (*Fowler v. Lanier*, *supra*, at p. 813, citing *Aldapa v. Fowler Packing Co., Inc.* (E.D. Cal.) No. 1:15–cv–00420–JAM–SAB.)

### *Fowler and Gerawan's Federal Constitutional Challenges to AB 1513*

After the enactment of AB 1513, Fowler and Gerawan filed an action in federal district court against the secretary of the Agency, the director of the Department of Industrial Relations, and the California Labor Commissioner. (*Fowler v. Lanier*, *supra*, 844 F.3d 809.) The federal court action is based on Fowler and Gerawan's claims the AB 1513 "carve-outs violated the Bill of Attainder Clause and the Equal Protection Clause of the United States Constitution, as well as [a]rticle IV, [s]ection 16 of the California Constitution." (*Id.* at pp. 811–812.) The federal district court dismissed the action, and Fowler and Gerawan appealed the dismissal of their federal constitutional claims. (*Id.* at p. 814.) The Ninth Circuit Court of Appeals affirmed the dismissal of the

5

Bill of Attainder claims but reversed the dismissal of the Equal Protection claims. (*Id.* at p. 812.)

As to the Equal Protection claims, the Ninth Circuit relied on assertions in Fowler and Gerawan's complaint that set forth "allegations relating to AB 1513's legislative history. According to the complaint, late in the 2014 legislative term, a bill that established the safe harbor, but one without any of the carve-outs, was proposed to the California legislature. That bill was never formally introduced. On March 5, 2015, an initial version of AB 1513 was introduced. This initial version did not address piece-rate compensation or the *Gonzalez* or *Bluford* decisions; it instead addressed an unrelated labor issue. On August 27, 2015, a new version of AB 1513 was reintroduced. Bearing no resemblance to its initial version, the new AB 1513 contained the carve-out provisions challenged here. The new AB 1513 was a result of 'closed negotiations' between the [Agency], labor unions including the United Farm Workers of America, and employer groups. Assemblymember Das Williams presented the bill to the legislature with sixteen days left in the 2015 session, a fact that prompted one Senator to comment that 'not only is the ink wet, there's no ink on the paper on some of these issues that have been surfaced that are . . . core, fundamental issues.' [Fowler and Gerawan] allege, based on a September 30, 2015, article published in the *Sacramento Bee*, which they attached to their complaint, that the carve-outs were demanded by the UFW as necessary conditions to obtain UFW's support for the safe harbor provision. [Fowler and Gerawan] also allege that UFW sought the carve-outs as retribution for Gerawan's resistance in contractual negotiations with the union." (*Fowler v. Lanier*, *supra*, 844 F.3d at pp. 813-814.)

The Ninth Circuit held the assertions in Fowler and Gerawan's complaint stated colorable claims under the Equal Protection Clause of the United States Constitution. The Ninth Circuit determined the rational basis standard of review applied because "AB

6

1513 implicates no suspect class or fundamental right." (*Fowler v. Lanier*, *supra*, 844 F.3d at p. 814.) Under that standard, Fowler and Gerawan argued "that AB 1513 fails to satisfy rational basis review because the only reason the carve-outs were included in the final bill was to procure the support of the UFW." (*Id.* at p. 815.) The Ninth Circuit held that "if that is the only justification for the carve-outs, that justification alone does not survive constitutional scrutiny. [Fowler and Gerawan] have plausibly alleged that the cut-off dates in sections (g)(2) and (g)(5) were included in AB 1513 for only that illegitimate purpose. Each cut-off date corresponds, within a matter of weeks (or even a matter of days), to the corresponding filing dates of the cases against Fowler, Gerawan, and Delano [Farms Company, another agricultural company]. Accepting [Fowler and Gerawan's] allegations as true, as we must at this stage of the litigation, we can conceive of no other reason why the California legislature would choose to carve out these three employers other than to respond to the demands of a political constituent." (*Fowler v. Lanier*, *supra*, at p. 815.) Based on this conclusion, the Ninth Circuit reversed the trial court's dismissal and remanded for further proceedings on Fowler and Gerawan's Equal Protections claims. (*Id.* at pp. 814-816, 819.)

### *Public Records Act Request by Fowler and Gerawan*

On September 30, 2015, Fowler and Gerawan's legal counsel submitted a request for documents from the Agency under the Public Records Act. In pertinent part, Fowler and Gerawan's attorney requested: "Any and all public records referring or relating to communications between the [Agency], its officers, and its staff and the United Farm Workers of America regarding AB 1513;" "Any and all public records referring or relating to the statutory carve out for any 'claim asserted in a court pleading filed prior to March 1, 2014,' as codified in AB 1513 section 226.2(g)(2)(A);" and "Any and all public records referring or relating to AB 1513" and Fowler and Gerawan.

7

The parties engaged in communications about the scope of the request. On January 20, 2016, the Agency produced 119 pages in response to the Public Records Act request. Some of the produced documents were redacted as to the identity and content of e-mail communications. The Agency also indicated it was withholding additional unspecified documents on grounds of privileges—including official information under Evidence Code section 1040, the deliberative process privilege under section 6255, and attorney work product under Code of Civil Procedure section 2018.030. On March 16, 2016, the Agency stated it did not intend to produce any additional documents under the Public Records Act.

On March 24, 2016, Fowler and Gerawan filed a petition for writ of mandate in the superior court to seek compliance with the Public Records Act. The Agency opposed the petition, arguing it had properly complied with the Public Records Act in disclosing nonprivileged documents.

On August 11, 2016, the trial court issued a ruling on submitted matter granting Fowler and Gerawan's petition in part and denying the petition in part. In its ruling, the trial court noted the Agency had withheld "responsive records – allegedly about three banker boxes worth of materials." The trial court allowed that "intra-agency documents reflecting the mental processes of Agency attorneys are protected attorney work product," but stated the "Agency has failed to meet its burden to show that communications between Agency staff and attorneys for Legislative Counsel fall within the scope of the doctrine." The trial court reasoned: "An attorney-client relationship exists between Legislative Counsel and the members of the Legislature or Governor. (See Gov. Code § 10207.) There is no attorney-client relationship between Legislative Counsel and the Agency."

As to the claim of privilege under Evidence Code section 1040, the trial court found that "the Agency has produced evidence establishing the threshold determination

8

that it solicited input from 'stakeholders' on a 'confidential basis.'" The trial court further found "that the Agency's interest in preserving the confidentiality of communications regarding the legislative proposal outweighs the public interest in disclosure. If the Agency were compelled to disclose its confidential communications with stakeholders, its ability to have candid discussions with stakeholders would be greatly diminished, and the quality of its decisionmaking would be reduced."

The trial court "acknowledge[d] that some of the materials withheld by the Agency likely fall within the scope of the privilege as deliberative materials. As to these materials, for the same reasons articulated above, the court finds that the public interest in nondisclosure outweighs the public interest favoring disclosure, so the deliberative process privilege applies." Nonetheless, the trial court stated that "not all of the documents at issue are 'deliberative.' For example, communications made by the Agency to third parties are not 'deliberative.' Likewise, communications by interested parties seeking to influence Agency decisions generally cannot be considered part of the deliberative process, which is the internal process by which government policy is processed and formulated by senior (policymaking) officials."

The trial court ordered that, "[t]o the extent the Agency continues to withhold documents based on the deliberative process privilege, the Agency is directed to prepare and submit to Petitioners an index identifying the author, recipient, and general subject matter of the document." The trial court concluded by directing counsel for Fowler and Gerawan to prepare a formal order, submit it to opposing counsel for approval as to form, and then to the court.

The parties were unable to agree on a formal order. Fowler and Gerawan sent a letter to the trial court to request clarification regarding the scope of the privileges to which the Agency was entitled.

9

On September 19, 2016, the trial court issued a minute order stating: "It is clear to the court that significant differences of opinion remain regarding the scope of the Agency's production, and the court is persuaded that these disputes should be resolved before the court issues its Order in this case." Thus, the trial court directed that "[t]o the extent the Agency continues to withhold responsive documents, the Agency is directed to prepare and submit to Petitioners an index identifying the author, recipient (if any), general subject matter of the document, and the nature of the exemption claimed. The parties are directed to then meet and confer and attempt to resolve any remaining disputes."

On September 21, 2016, the Agency requested clarification about the trial court's order. On September 30, 2016, the trial court sent a letter to the Agency. In pertinent part, the letter stated: "The court intended its most recent Minute Order to require an index of all of the responsive records withheld by the Agency. As you correctly noted, this is a change from the court's August Ruling - a change the court has deemed necessary based on the significant differences of opinion that remain regarding the scope of the Agency's production. The court finds the Agency's concerns about divulging the identities of 'stakeholders' to be unfounded. In general, the identities of the stakeholders already are known. And to the extent they are unknown, the court is not persuaded that divulging the identities for purposes of a 'privilege log' will have any significant 'chilling effect' on the Agency's ability to have candid discussions with future stakeholders. . . . [¶] . . . The Agency is directed to . . . prepare an index of all responsive records that are being withheld by the Agency, so that this case may progress to a final disposition."[2]

---

[2] The trial court used the terms "index" and "privilege log" interchangeably. The index order to be prepared is roughly equivalent to a privilege log because the trial court

On October 6, 2016, the Agency filed an ex parte application in the trial court to seek a stay of the court's orders and an enlargement of time to file a writ petition with this court. Fowler and Gerawan opposed the application. On October 7, 2016, the trial court heard and denied the application.

### Alternative Writ and Stay of the Trial Court's Orders

On October 13, 2016, the Agency filed a petition for writ of mandate in this court.

On November 17, 2016, this court filed an order issuing an alternative writ of mandate and stay of the trial court's order directing preparation of an index. Fowler and Gerawan filed a return, followed by a reply by the Agency.

## DISCUSSION

### I

### *Timeliness*

A cardinal rule of appellate review is that appeals and writs must be brought in a timely manner. (See *MinCal Consumer Law Group v. Carlsbad Police Dept.* (2013) 214 Cal.App.4th 259, 263 (*MinCal*).) To ensure the time for review of the trial court's rulings on Fowler and Gerawan's Public Records Act request has not been foreclosed, this court issued an order to show cause why the Agency's writ petition should not be dismissed as untimely. We have received and considered responses on the issue of timeliness from the Agency as well as from Fowler and Gerawan. We conclude the Agency filed its writ petition in a timely manner.

---

in this case ordered the Agency to identify the nature of the exemption or privilege claimed for each withheld document. (See *Best Products, Inc. v. Superior Court* (2004) 119 Cal.App.4th 1181, 1188–1189 [defining privilege log].) For the sake of clarity, we use the term "index" to describe the catalog of documents, identities, and privileges ordered by the trial court.

11

## A.

### *Applicability of Section 6259's Deadline*

With an exception not applicable to this case, section 6259 provides that "an order of the court, either directing disclosure by a public official or supporting the decision of the public official refusing disclosure, is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ." (§ 6259, subd. (c); *MinCal*, *supra*, 214 Cal.App.4th at p. 263.) Subdivision (c) of section 6259 also imposes a deadline for bringing a writ petition to challenge the trial court's ruling on a Public Records Act request by providing: "Upon entry of any order pursuant to this section, a party shall, in order to obtain review of the order, file a petition within 20 days after service upon him or her of a written notice of entry of the order, or within such further time not exceeding an additional 20 days as the trial court may for good cause allow." Thus, the period within which writ review must be sought under section 6259 begins to run upon entry of "*an order* of the trial court." (*City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1016, italics added.)

Here, the Agency was directed to prepare an index disclosing the identities of persons with whom it confidentially communicated as well as the general subject matter of the communications. Thus, the trial court's direction to prepare an index is *preliminary* to any order "directing disclosure by a public official or supporting the decision of the public official refusing disclosure." (§ 6259, subd. (c).) The totality of the language in section 6259 makes clear that, for lack of an order to produce documents or confirming the withholding of documents, subdivision (c) does not yet apply to impose a deadline to seek appellate review in this case.

The inapplicability of the deadline provided by section 6259, however, does not mean the Agency has no obligation to timely seek writ review of the order to prepare an index. "Interlocutory review by writ is the only adequate remedy where a court orders production of documents which may be subject to a privilege, 'since once privileged matter has been disclosed there is no way to undo the harm which consists in the very disclosure.' " (*Korea Data Sys. Co. v. Superior Court* (1997) 51 Cal.App.4th 1513, 1516, quoting *Raytheon Co. v. Superior Court* (1989) 208 Cal.App.3d 683, 686.) Thus, appellate courts have issued common law writs of review of claims regarding privileged materials before their disclosure. (E.g., *Catalina Island Yacht Club v. Superior Court* (2015) 242 Cal.App.4th 1116, 1124.)

Generally, "a writ petition should be filed within the 60-day period that applies to appeals." (*Cal West Nurseries, Inc. v. Superior Court* (2005) 129 Cal.App.4th 1170, 1173.) Here, the Agency filed its petition for writ of mandate within two weeks of the trial court's September 30, 2016 clarification of the scope of the index. The trial court's September 30, 2016 letter to the parties constitutes an order directing preparation of an index. (Code Civ. Proc., § 1003 ["Every direction of a court or judge, made or entered in writing, and not included in a judgment, is denominated an order"].) The September 30, 2016 order is the appropriate ruling for the Agency to seek relief because it substantially changed the court's earlier rulings to compel immediate production of an index that would itself disclose information the Agency claims to be privileged. The Agency's writ petition was timely filed within the presumptive 60-day deadline that began upon the trial court's direction to prepare and disclose an index of privileged documents to Fowler and Gerawan.

## II

### Standards of Review

In reviewing the Agency's writ petition, we "conduct an independent review of the trial court's ruling" insofar as it presents questions of statutory interpretation and law. (*Times Mirror*, *supra*, 53 Cal.3d at p. 1336.) Under the substantial evidence standard of review, "factual findings made by the trial court will be upheld if based on substantial evidence." (*Ibid.*)

## III

### The Public Records Act

The Public Records Act provides that "each state or local agency, upon a request for a copy of records that reasonably describes an identifiable record or records, shall make the records promptly available to any person upon payment of fees covering direct costs of duplication, or a statutory fee if applicable," with the exception of "public records exempt from disclosure by express provisions of law." (§ 6253, subd. (b).) Section 6254 exempts records "the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (§ 6254, subd. (k).) Section 6254 enumerates various categories of materials that are exempt from disclosure, including "[i]nformation received in confidence by any state agency . . . ." (§ 6254, subd. (d)(4).)

Section 6255 provides a catch-all exception that allows an agency to withhold records for which "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." Thus, "even if the record does not fall within one of the section 6254 exemptions, the record still can be withheld if the government can demonstrate that 'on the facts of [a] particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record.' (§ 6255.) These

14

exemptions are to be narrowly construed (*Fairley v. Superior Court* (1998) 66 Cal.App.4th 1414, 1420 (*Fairley*)), and the government agency opposing disclosure bears the burden of proving that one or more apply in a particular case." (*County of Los Angeles v. Superior Court* (2000) 82 Cal.App.4th 819, 825.)

Unlike the federal Freedom of Information Act upon which it is modeled, the Public Records Act does not "require the maintenance of an index of records available for public inspection and copying . . . ." (*State Bd. of Equalization v. Superior Court* (1992) 10 Cal.App.4th 1177, 1193.) However, the Public Records Act also "does not prohibit a court from ordering the preparation of a list of the documents which are sought." (*Ibid.*) In appropriate circumstances, "[p]roviding such a list is consistent with the language and spirit of the Public Records Act." (*Ibid.*)

Just as an index of available records is not required, the Public Records Act also does not require in camera review by a court to determine whether an agency has properly withheld documents from disclosure. In *Times Mirror*, the trial court denied a request for in camera review of documents withheld by the Governor's office under claims of exemption from the Public Records Act. (53 Cal.3d at p. 1332.) The Court of Appeal in *Times Mirror* remanded the matter to the trial court to conduct in camera review for "segregation of any information posing a legitimate security risk, and disclosure of all nonexempt material." (*Ibid.*) The Supreme Court reversed, explaining it was not "persuaded by the Times's contention that the trial court abused its discretion simply by failing to review the records in camera. Section 6259, subdivision (a), provides that the trial court may order disclosure where it appears that records are being improperly withheld, and states that '[t]he court shall decide the case after examining the record in camera, if permitted by subdivision (b) of Section 915 of the Evidence Code, papers filed by the parties and such oral argument and additional evidence as the court may allow.' " (*Id.* at p. 1347, fn. 15.) The *Times Mirror* court held, "We have never

construed this section to compel an in camera review where-as here-such review is unnecessary to the court's decision, and we decline to do so here." (*Ibid.*)

## IV

### *Deliberative Process Privilege*

The Agency contends the trial court erred in directing the preparation of an index of documents that itself would reveal the identities of third parties with whom the Agency communicated confidentially during the deliberative process of drafting AB 1513. The contention has merit.

### A.

### *Deliberative Process Privilege and Identity*

In *Times Mirror*, the California Supreme Court recognized a deliberative process privilege intended "[t]o prevent injury to the quality of executive decisions . . . ." (53 Cal.3d at p. 1341.) " 'Accordingly, the . . . courts have uniformly drawn a distinction between predecisional communications, which are privileged [citations]; and communications made after the decision and designed to explain it, which are not.' (*NLRB v. Sears, Roebuck & Co*. [(1975)] 421 U.S. [132,] 151–152.) As Professor Cox in his seminal article on executive privilege has explained, protecting the predecisional deliberative process gives the chief executive 'the freedom "to think out loud," which enables him [or her] to test ideas and debate policy and personalities uninhibited by the danger that his [or her] tentative but rejected thoughts will become subjects of public discussion. Usually the information is sought with respect to past decisions; the need is even stronger if the demand comes while policy is still being developed.' (Cox, *Executive Privilege* (1974) 122 U. Pa. L. Rev. 1383, 1410.)" (*Times Mirror*, *supra*, at p. 1341.)

*Times Mirror* involved the question of whether the Governor could withhold his appointment calendars from a Public Records Act request based on the deliberative

16

process privilege. (53 Cal.3d at p. 1342.) In answering the question, the California Supreme Court surveyed federal decisional authority under the Freedom of Information Act to note that "the courts' focus in [executive privilege] cases is less on the nature of the records sought and more on the effect of the records' release. The key question in every case is 'whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.' (*Dudman Communications v. Dept. of Air Force* [(D.C. Cir. 1987)] 815 F.2d [1565,] 1568.) Even if the content of a document is purely factual, it is nonetheless exempt from public scrutiny if it is 'actually . . . related to the process by which policies are formulated' (*Jordan v. United States Dept. of Justice* (D.C. Cir. 1978) 591 F.2d 753, 774) or 'inextricably intertwined' with 'policy-making processes.' (*Ryan v. Department of Justice* [(D.C. Cir. 1980)] 617 F.2d [781,] 790; *Soucie v. David* (D.C. Cir. 1971) 448 F.2d 1067, 1078.)" (*Times Mirror*, *supra*, at p. 1342.)

Surveying this federal authority, the *Times Mirror* court determined: "The parallel here is evident. Disclosing the *identity* of persons with whom the Governor has met and consulted is the functional equivalent of revealing the substance or direction of the Governor's judgment and mental processes; *such information would indicate which interests or individuals he* [*or she*] *deemed to be of significance with respect to critical issues of the moment*. The intrusion into the deliberative process is patent." (*Times Mirror*, *supra*, 53 Cal.3d at p. 1343, italics added.) In so holding, the California Supreme Court rejected the argument that the public "is entitled to know how [the Governor] performs his [or her] duties, including the identity of persons with whom he [or she] meets in the performance of his [or her] duties as Governor." (*Id.* at p. 1344.)

The *Times Mirror* court acknowledged, "It could be argued, for example, that the prospect of publicity would expand rather than contract the number and variety of

17

persons meeting with the Governor. Disclosure might also reveal whether the Governor was, in fact, receiving a broad range of opinions, and ultimately whether the state's highest elected officer was attending diligently to the public business." (*Times Mirror*, *supra,* 53 Cal.3d at pp. 1344–1345.) Nonetheless, the California Supreme Court held: "The answer to these arguments is not that they lack substance, but pragmatism. The deliberative process privilege is grounded in the unromantic reality of politics; it rests on the understanding that if the public and the Governor were entitled to precisely the same information, neither would likely receive it. Politics is an ecumenical affair; it embraces persons and groups of every conceivable interest: public and private; popular and unpopular; Republican and Democratic and every partisan stripe in between; left, right and center. To disclose *every* private meeting or association of the Governor and expect the decisionmaking process to function effectively, is to deny human nature and contrary to common sense and experience." (*Id.* at p. 1345.)

The *Times Mirror* court further noted section 6254 "exempts records 'the disclosure of which is exempted or prohibited pursuant to provisions of federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege.' Section 1040 of the Evidence Code establishes a privilege for 'official information,' defined as 'information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.' (Evid. Code, § 1040, subd. (a).) Under subdivision (k) of section 6254, therefore, the instant records might arguably be exempt from disclosure pursuant either to the common law 'mental process' [citation] or the statutory 'official information' privilege." (*Times Mirror*, *supra*, 53 Cal.3d at p. 1339, fn. 9.)

This court had occasion to apply *Times Mirror* in *Cal. First Amendment Coalition v. Superior Court* (1998) 67 Cal.App.4th 159 (*Cal. First*). *Cal. First* involved a Public Records Act request for written applications submitted to the Governor in confidence by

18

candidates for a vacancy on a local board of supervisors. (*Id.* at p. 164.) As predecisional information submitted to the Governor, the applications were potentially subject to the deliberative process privilege. (*Id.* at pp. 172-173.) Nonetheless, this court cautioned that "[n]ot every disclosure which hampers the deliberative process implicates the deliberative process privilege. Only if the public interest in nondisclosure clearly outweighs the public interest in disclosure does the deliberative process privilege spring into existence. The burden is on the Governor to establish the conditions for creation of the privilege." (*Id.* at pp. 172–173.)

On the record provided in *Cal. First*, this court concluded the confidential applications were subject to deliberative process privilege. "Candor is less likely to be forthcoming if the applicant knows the facts will be disclosed regardless of the outcome. Perhaps probing inquiries and public disclosures are the price one pays to be a public official but it is not likely a cost that one who is merely an applicant for appointment to a position would be willing to suffer. . . . The pool of quality applicants from which the Governor might select could be reduced; worthy prospects might elect to forego the opportunity. Moreover, those choosing to apply may be less forthright in their responses." (*Cal. First*, *supra*, 67 Cal.App.4th at p. 172.)

In *Cal. First*, this court reiterated that "an in-camera hearing is not always necessary to resolve the weighing process required by section 6255. The request sought all applications and was not confined to a particular candidate or information of a particular character. [The requesting party] offered no reasons for disclosure beyond public policies which underlie the Public Records Act generally. While an in-camera review may be indicated in an appropriate case, this is not such a case." (*Cal. First*, *supra*, 67 Cal.App.4th p. 174.)

**B.**

*Predecisional Communications Regarding AB 1513*

The Agency acted at the direction of the Governor in formulating the policies to be codified by AB 1513. To this end, the Agency worked with key staff in the Governor's office and the Legislature. The Agency also engaged in confidential communications with third parties regarding the issues relating to piece-work compensation that were to be addressed in AB 1513. These third parties had diverse and conflicting views regarding the proposed substance of AB 1513. Indeed, some individuals who communicated in confidence with the Agency represented constituencies that themselves had divided views on the aims of the legislation. The information the Agency acquired in confidence was relied upon in its decisionmaking process and influenced the substantive choices of language for AB 1513. However, in the absence of confidentiality, the Agency would have received less candid input into the proposed legislation and may not have heard the viewpoints of persons who were knowledgeable about the issues but represented divided constituencies.

The trial court's initial ruling on submitted matter determined the Agency properly withheld records as official information protected under Evidence Code section 1040. In support of the ruling, the trial court found that "the Agency has produced evidence establishing the threshold determination that it solicited input from 'stakeholders' on a 'confidential basis.' " The trial court further found "that the Agency's interest in preserving the confidentiality of communications regarding the legislative proposal outweighs the public interest in disclosure. If the Agency were compelled to disclose its confidential communications with stakeholders, its ability to have candid discussions with stakeholders would be greatly diminished, and the quality of its decisionmaking would be reduced."

Although the trial court did not change its factual findings regarding the confidential nature of third party communications with the Agency during the predecisional phase, the court's September 30, 2016 letter order nonetheless required the Agency "to prepare and submit to Petitioners an index identifying the author, recipient (if any), general subject matter of the document, and the nature of the exemption claimed" for every document withheld as official information. The trial court acknowledged the requirement of the index constituted a material change from its prior ruling and gave two reasons for the change: (1) "the Agency's concerns about divulging the identities of 'stakeholders' to be unfounded," and (2) "[i]n general, the identities of the stakeholders already are known." We are not persuaded by either reason.

As to the first reason, we hearken back to the reasoning in *Cal. First* where this court observed candor is likely to be threatened when a party knows communications will be revealed to the public. As this court noted, " 'Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process.' " (*Cal. First*, *supra*, 67 Cal.App.4th at p. 172, quoting *United States v. Nixon* (1974) 418 U.S. 683, 705, 41 L.Ed.2d 1039, 1062.)

The harm in revealing the identities of third parties who communicated confidentially with the Agency is that it will tend to dissuade stakeholders on issues subject to future legislative efforts from commenting frankly, or at all, on matters for which only varying viewpoints can provide a more complete picture. As in *Times Mirror*, disclosing the identity of persons with whom the Agency "has met and consulted is the functional equivalent of revealing the substance or direction" of the Agency's "judgment and mental processes." (*Times Mirror*, *supra*, 53 Cal.3d at p. 1343.) Just as revealing the substance of the Agency's confidential communications with third parties would run afoul of the deliberative process privilege, so too disclosure of the

21

identities of the persons with whom the Agency communicated implicates the same concern.

As to the second reason regarding whether the third parties' identities are generally known, we discern no support for this finding in the record. In opposing Fowler and Gerawan's writ petition in the trial court, the Agency's director of legislation declared the third party communications were received in confidence and disclosure of the communicating parties "would very likely cause retaliation in the form of harassment and ostracization from the representatives' *own* supporters." Although Fowler and Gerawan filed a reply to the Agency's opposition, their reply does not contradict the assertion that the parties' communicated confidentially. And none of the parties' communications with the trial court prior to its September 30, 2016 letter order asserted that any identities of the third parties were known. Consequently, the record does not support the trial court's finding that the identities of the persons with whom the Agency communicated confidentially were already known.

We reject as inapposite Fowler and Gerawan's reliance on the California Supreme Court's recent decision in *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608. In *City of San Jose*, the Supreme Court held city employees' private voicemails, e-mails, and text messages relating to city business may be subject to disclosure under the Public Records Act. (*Id.* at p. 623.) The *City of San Jose* court thus rejected an interpretation that "would allow evasion of [the Public Records Act] simply by the use of a personal account." (*Id.* at p. 625.) This case, however, does not involve any allegation that the Agency has attempted to exempt any material from disclosure under the Public Records Act on grounds the writing or communication was made using a personal account or personal electronic device.

We conclude the trial court erred in ordering the Agency to disclose the identities of persons with whom it communicated confidentially during the predecisional phase of

22

gathering information for the drafting of AB 1513.  As the California Supreme Court recognized, "To disclose *every* private meeting or association of the [agency] and expect the decisionmaking process to function effectively, is to deny human nature and contrary to common sense and experience."  (*Times Mirror, supra*, 53 Cal.3d at p. 1345.)

**V**

***Attorney Work Product Privilege***

The Agency next contends the trial court erred in requiring the release of attorney work product produced by the Legislative Counsel to assist the Agency in formulating AB 1513.  This contention also has merit.

**A.**

***Legislative Counsel's Attorney-client Relationship with the Agency***

Section 10207, subdivision (b)(1), provides in pertinent part that "Legislative Counsel shall maintain the attorney-client relationship with the Governor with respect to communications between the Governor and the Legislative Counsel.  All materials arising out of this relationship, including, but not limited to, legal services concerning any bill in the Governor's hands for rejection, approval, or other action, legal services concerning any legal opinion provided to the Governor, and legal services concerning any matter as the circumstances permit and the Governor requests, prepared by the Legislative Counsel, are not public records, except when released by the Governor."

The Government Code further provides that the Agency acts under the authority of the Governor in coordinating with other federal, state, and local entities.  Specifically, section 15556 provides that the Agency's "secretary shall exercise the authority vested in the Governor in respect to the functions of each department, office, or other unit within the agency, including the adjudication of conflicts between or among the departments, offices, or other units, and shall represent the Governor in coordinating the activities of

each department, office, or other unit within the agency with those of other agencies, whether federal, state, or local." (§ 15556.)

**B.**

### *Collaboration on AB 1513*

The Governor responded to the decisions in *Gonzalez, supra,* 215 Cal.App.4th 36, and *Bluford, supra,* 216 Cal.App.4th 864, by directing the Agency to take the lead in formulating legislation to address rules and penalties applicable to employers of piece-work compensated employees. The Governor also tasked the Agency with determining an expedited process by which employers would timely pay piece-work employees any overdue back wages. In determining the substantive content of AB 1513, the Agency communicated with Legislative Counsel. Legislative Counsel provided confidential legal services to the Agency by submitting drafts of the legislation, legal opinions, and recommendations. Attorneys for the Agency reviewed and analyzed received proposals and draft bills.

The trial court rejected the Agency's assertion of the work product privilege regarding communications with Legislative Counsel as follows: "The Agency has failed to meet its burden to show that communications between Agency staff and attorneys for Legislative Counsel fall within the scope of the doctrine. An attorney-client relationship exists between Legislative Counsel and the members of the Legislature or Governor. (See . . . § 10207.) There is no attorney-client relationship between Legislative Counsel and the Agency. [¶] Even if the Agency could show that Legislative Counsel had a 'shared interest' in confidentiality – which it has not – this would not be enough to avoid waiver. For the common interest doctrine to attach, the two parties must have a shared interest in securing legal advice related to the matter, and disclosure of the information must be reasonably necessary for the accomplishment of the purpose for which the lawyer was consulted. (*OXY Resources California LLC v. Superior Court* (2004) 115

24

Cal.App.4th 874, 889-891 (*Oxy Resources*).)  The Agency has failed to show that the common interest doctrine applies to protect communications between the Agency and Legislative Counsel."

## C.

### *Applicability of the Attorney Work Product Privilege*

The attorney work product privilege is codified in Code of Civil Procedure section 2018.030 that provides:  "(a) A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances.  [¶]  (b) The work product of an attorney, other than a writing described in subdivision (a), is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice."  This rule "creates for the attorney a qualified privilege against discovery of general work product and an absolute privilege against disclosure of writings containing the attorney's impressions, conclusions, opinions or legal theories."  (*BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1250 (*BP Alaska*).)  "The protection afforded by the privilege is not limited to writings created by a lawyer in anticipation of a lawsuit.  It applies as well to writings prepared by an attorney while acting in a nonlitigation capacity."  (*County of Los Angeles v. Superior Court, supra,* 82 Cal.App.4th at p. 833.)  And "the attorney's absolute work product protection continues as to the contents of a writing delivered to a client in confidence."  (*BP Alaska, supra,* at p. 1253.)

The attorney work product privilege applies to exempt documents from Public Records Act requests.  (*Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176, 1182 (*Ardon*).)  In *Ardon*, the California Supreme Court held the City of Los Angeles's inadvertent disclosure of documents in response to a Public Records Act request did not forfeit the attorney work product privilege applying to the documents.  (*Id.* at

25

pp. 1182-1183.) In the absence of a voluntary waiver of attorney work product privilege, protected documents retain their privileged and confidential nature. (*Id.* at pp. 1187-1188.)

The attorney-client relationship between Legislative Counsel and the Governor extended to the Agency as it acted under the authority and at the direction of the Governor in formulating AB 1513. (§ 15556.) The materials submitted by Legislative Counsel to the Agency regarding AB 1513 comprised "impressions, conclusions, opinions, or legal research or theories" that are protected by the attorney work product privilege. (Code Civ. Proc., § 2018.030.) Accordingly, these materials are not subject to compelled disclosure under the Public Records Act. (*Ardon, supra,* 62 Cal.4th at pp. 1181-1183.)

We reject Fowler and Gerawan's argument the attorney-client relationship between Legislative Counsel and the executive branch be constrained to the Governor and to the exclusion of the Agency. The separation of the executive branch into agencies and departments is for the convenience of the Governor and does not warrant the denial of the attorney-client privilege for communications with Legislative Counsel made at the request of the Governor. Section 15556 expressly vests the authority of the Governor in the Agency's secretary when coordinating with other governmental agencies. Thus, the Agency received communications and documents from Legislative Counsel regarding AB 1513 in the context of an attorney-client relationship that gives rise to the work product privilege. (§ 10207, subd. (b)(1); Code Civ. Proc., § 2018.030, subd. (a).)

The trial court erred in concluding the Agency waived any attorney work product privilege by sharing documents with Legislative Counsel. The record does not show the Agency submitted documents to Legislative Counsel. Instead, the record shows Legislative Counsel sent drafts of AB 1513, legal opinions, and recommendations to the

26

Agency on a confidential basis. There is no indication the Agency forwarded the documents received from Legislative Counsel to third parties.[3] Thus, the trial court's finding of waiver depends solely on Legislative Counsel's submission of documents to the Agency. As we have explained, Legislative Counsel provided the materials to the Agency on a confidential basis and within the attorney-client relationship created by section 10207, subdivision (b)(1).

In finding a waiver of the attorney work product privilege, the trial court misplaced its reliance on *OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874 (*OXY Resources*). *OXY Resources* involved a complex business deal in which OXY Resources California LLC (OXY) and EOG Resources, Inc. (EOG) entered into a "Joint Defense Agreement" to cooperate in preparing and defending against any legal action. (*Id.* at p. 881.) As anticipated, OXY and EOG were sued over the deal. Documents reflecting the communications about the deal between OXY and EOG were requested in discovery. (*Id.* at p. 879.) OXY asserted the documents were not discoverable because they were privileged under a common interest privilege. (*Id.* at p. 888.) Other jurisdictions have recognized a common interest privilege that "operates as an exception to the general rule that a privilege is waived upon voluntary disclosure of the privileged information to a third party." (*Ibid.*) The question presented

---

**3** The trial court noted the Agency's general counsel, Mark Woo-Sam, was also serving as acting general counsel of the California Agricultural Labor Relations Board. However, the trial court did not find a waiver of any privilege based on Woo-Sam's dual roles. Instead, the trial court's finding of waiver applied only to the extent documents were shared with unidentified "other agencies." Because the record does not contain evidence the Agency shared materials received from Legislative Counsel with any other entity or third party, we do not reach the question of whether such sharing would constitute a waiver of the attorney work product privilege. We also note Fowler and Gerawan do not argue Woo-Sam's receipt of documents from Legislative Counsel waived any privilege.

27

for the *OXY Resources* court was whether such a privilege exists in California.  (*Id.* at p. 889.)

The *OXY Resources* court noted a common interest privilege has not been recognized by statute in California and rejected the contention that such a privilege be judicially created "as an 'extension' of the attorney-client privilege."  (115 Cal.App.4th at p. 889.)  The *OXY Resources* court held that "the common interest doctrine is more appropriately characterized under California law as a nonwaiver doctrine, analyzed under standard waiver principles applicable to the attorney-client privilege and the work product doctrine."  (*Ibid.*)

As to waiver of the attorney work product privilege, the *OXY Resources* court explained:  " 'There is no statutory provision governing waiver of work product protection.  [Citation.]'  (*Raytheon* [*Co. v. Superior Court* (1989)] 208 Cal.App.3d [683,] 688; cf. Code Civ. Proc., § 2018.)  However, California courts have recognized that the waiver doctrine is applicable to the work product rule as well as the attorney-client privilege.  (*Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 214.)  The work product protection may be waived 'by the attorney's disclosure or consent to disclosure to a person, *other than the client*, who has no interest in maintaining the confidentiality . . . of a significant part of the work product.'  (2 Jefferson, Cal. Evidence Benchbook (3d ed. 2003) § 41.6; see also *BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1261; *Raytheon, supra*, 208 Cal.App.3d at p. 689.)  Thus, work product protection 'is not waived except by a disclosure wholly inconsistent with the purpose of the privilege, which is to safeguard the attorney's work product and trial preparation. [Citations.]'  (*Raytheon, supra*, 208 Cal.App.3d at p. 689.)"  (*OXY Resources*, *supra*, 115 Cal.App.4th at p. 891, italics added.)

Here, Legislative Counsel did not disclose attorney work product to a nonclient – the Agency *was* the client for purposes of drafting assistance and advice on AB 1513.

Unlike *OXY Resources*, which involved the question of documents exchanged between co-defendants, this case involves the receipt of work product by the client from the client's legal counsel. The attorney-client relationship between Legislative Counsel and the Agency gave rise to the work product privilege rather than constituting a waiver of the privilege. The record does not indicate conduct that can be construed as a waiver of the work product privilege in the absence of a showing Legislative Counsel disclosed the work product to any person or entity other than its client, the Agency. And the record also does not show the Agency waived the work product privilege by disclosing the work product to third parties. Accordingly, the privilege continued to apply to the work product relating to AB 1513 that was produced by Legislative Counsel for the Agency.

As we have explained, Fowler and Gerawan seek the requested information in an attempt to prove AB 1513 violates equal protection. Although we hold in this case that the Agency need not, in the context of the Public Records Act, prepare an index in the form ordered by the trial court, we are not called upon to decide, and we do not address, whether there might be other ways to obtain the desired information, or other ways to prove or disprove the constitutional challenge.

### DISPOSITION

Let a peremptory writ of mandate issue, directing the trial court to vacate its order requiring the Labor and Workforce Development Agency to produce an index identifying the author, recipient, general subject matter, and nature of the exemption claimed for withholding documents requested by Fowler Packing Company, Inc., and Gerawan Farming, Inc., under the California Public Records Act (Gov. Code, § 6250 et seq.). The alternative writ, having served its function, is discharged. Our order staying proceedings in the trial court shall remain in effect until this opinion is final. The Labor and

29

Workforce Development Agency shall recover its costs for its writ petition and proceedings in this court. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

/s/
HOCH, J.

We concur:

/s/
MAURO, Acting P. J.

/s/
NICHOLSON, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

30