**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FOWLER PACKING COMPANY, INC.; GERAWAN FARMING, INC., *Plaintiffs-Appellants*, <br><br> v. <br><br> DAVID M. LANIER, in his official capacity as Secretary of the California Labor and Workforce Development Agency; CHRISTINE BAKER, in her official capacity as the Director of the Department of Industrial Relations; JULIE A. SU, in her official capacity as California Labor Commissioner, *Defendants-Appellees.* | No. 16-16236 <br><br> D.C. No. 1:16-cv-00106-DAD-SAB <br><br><br> OPINION |

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted November 16, 2016
San Francisco, California

Filed December 20, 2016

Before: Ronald M. Gould, Richard R. Clifton,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Gould

# SUMMARY[*]

## Civil Rights

The panel provided reasoning for its order filed on December 9, 2016, which affirmed in part and reversed in part the district court's dismissal of a complaint against California officials alleging that certain "carve-out" provisions in California Assembly Bill (AB) 1513 violated the Equal Protection Clause and the Bill of Attainder Clause.

California passed Assembly Bill 1513 in response to state appellate court decisions that exposed employers to significant and unexpected minimum wage liability. This law created a "safe harbor" that gave employers an affirmative defense against the new claims so long as the employer made back payments under certain conditions. The legislation, however, also included specific "carve-outs" that were crafted such that three or four employers, including plaintiffs, would be precluded from using the safe harbor in then-pending litigation against them.

The panel held that accepting plaintiffs' allegations as true, the only conceivable explanation for AB 1513's carve-outs was that they were necessary to procure the United Farm Workers' support in passing the legislation. The panel held that because this justification would not survive even rational basis scrutiny, plaintiffs' complaint plausibly stated a claim that the cut-out provisions violated the Equal Protection

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Clause. The panel remanded the case to the district court for further proceedings with respect to the equal protection claim.

The panel further held that AB 1513's carve-outs did not impose punishment upon plaintiffs. Because punishment is a necessary element of a bill of attainder, the district court properly dismissed this claim.

## COUNSEL

David A. Schwarz (argued) and Michael D. Harbour, Irell & Manella LLP, Los Angeles, California, for Plaintiffs-Appellants.

Thomas Patton (argued), Deputy Attorney General; Mark R. Beckington, Supervising Deputy Attorney General; Douglas J. Woods, Senior Assistant Attorney General; Kamala D. Harris, Attorney General; Office of the Attorney General, Sacramento, California; for Defendants-Appellees.

Damien M. Schiff and Wencong Fa, Pacific Legal Foundation, Sacramento, California, for Amici Curiae Western Growers, California Fresh Fruit Association, African-American Farmers of California, California Farm Bureau Federation, Fresno County Farm Bureau, and Nisei Farmers League.

**OPINION**

GOULD, Circuit Judge:

In response to recent state appellate court decisions that exposed employers to significant and unexpected minimum wage liability, California passed Assembly Bill 1513 (AB 1513). This law created a "safe harbor" that gave employers an affirmative defense against the new claims so long as the employer made back payments under certain conditions. AB 1513 allowed the employers to avoid the costs and statutory penalties that they would otherwise face as a result of underpayment litigation. The legislation, however, also included specific "carve-outs" that were crafted such that three or four employers would be precluded from using the safe harbor in then-pending litigation against them. Plaintiffs Fowler Packing Company, Inc. (Fowler) and Gerawan Farming, Inc. (Gerawan), assert that the legislature added these carve-outs to AB 1513 to obtain the necessary support of a labor union. Plaintiffs brought suit against Defendants, who are California officials, asserting that the carve-outs violated the Bill of Attainder Clause and the Equal Protection Clause of the United States Constitution, as well as Article IV, Section 16 of the California Constitution. The district court dismissed their complaint as to all claims. Plaintiffs appeal the dismissal of their federal constitutional claims only.

We have jurisdiction to review the district court's order under 28 U.S.C. § 1291. We hold that Plaintiffs' complaint states a plausible claim for relief under the Equal Protection Clause, but fails to state a plausible claim that AB 1513's carve-outs amount to a bill of attainder. The panel has previously filed an order on December 9, 2016, stating:

We conclude that the district court correctly dismissed the bill of attainder claim, but erroneously dismissed the equal protection claim. We therefore **AFFIRM** in part and **REVERSE** in part, and **REMAND** the case to the district court for further proceedings with respect to the equal protection claim only. A written opinion giving the court's reasoning will follow in due course.

The time for filing any petition for rehearing or petition for rehearing en banc shall be extended and shall not begin to run until the court has filed its written opinion giving its reasoning.

We now in this opinion provide our reasoning and note that the time for filing any petition for rehearing or rehearing en banc shall run from the filed date of this opinion.

# I

Plaintiffs' complaint asserts the following facts. Fowler and Gerawan are California corporations engaged in the agriculture business that pay some of their employees on a "piece-rate" basis. Piece-rate payment is a system in which employees are compensated according to tasks completed rather than hours worked. Relying on the then-prevailing interpretation of federal minimum wage statutes, Plaintiffs ensured they met California minimum wage laws by averaging their piece-rate employees' payment during a fixed period of time and supplementing any deficiency below the applicable state minimum wage. In 2013, two California Court of Appeal decisions, *Gonzalez v. Downtown LA*

*Motors, LP*, 215 Cal. App. 4th 36 (2013), and *Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864 (2013), held that piece-rate workers must also be paid for each hour of "nonproductive time"—time in which a worker was at work but not completing a task—and for rest, recovery, and meal periods. According to Plaintiffs' complaint, these decisions exposed many employers, including Plaintiffs, to unanticipated and potentially crippling class litigation.

In response, California enacted Assembly Bill 1513 (AB 1513) on October 10, 2015, which codified the holdings in *Gonzalez* and *Bluford*. Cal. Lab. Code § 226.2(a). To protect California businesses from unforeseen liability arising from *Gonzalez* and *Bluford*, however, AB 1513 also created a "safe harbor" that provided employers with an affirmative defense against claims alleging failure to pay previously for nonproductive work time. Cal. Lab. Code § 226.2(b). Employers can use the safe harbor so long as they pay, no later than December 15, 2016, any minimum wage deficiencies occurring between July 1, 2012, and December 31, 2015. Cal. Lab. Code § 226.2(b)(1)(A).

But another provision of AB 1513, set forth in Cal. Lab. Code § 226.2(g), makes certain defendants facing nonproductive work time claims ineligible for the safe harbor. One of these "carve-outs" makes a defendant ineligible if facing:

> [c]laims based on the failure to provide paid rest or recovery periods or pay for other nonproductive time for which all of the following are true:

(A) The claim was asserted in a court pleading filed prior to March 1, 2014, or was asserted in an amendment to a claim that relates back to a court pleading filed prior to March 1, 2014, and the amendment or permission for amendment was filed prior to July 1, 2015.

(B) The claim was asserted against a defendant named with specificity and joined as a defendant, other than as an unnamed (DOE) defendant . . . in the pleading referred to in subparagraph (A), or another pleading or amendment filed in the same action prior to January 1, 2015.

Cal. Lab. Code § 226.2(g)(2). Section 226.2(g)(2) makes Gerawan ineligible to assert the safe harbor as an affirmative defense in a class action suit filed against it by the General Counsel of the United Farm Workers of America (UFW) on February 3, 2014, *Amaro v. Gerawan Farming, Inc.*, No. 1:14-cv-00147-DAD-SAB (E.D. Cal.). It also would have precluded Delano Farms Company (Delano), another agricultural company that is not a party to this litigation, from asserting the safe harbor as an affirmative defense in a class action suit filed against it by the UFW, in which the plaintiffs filed a motion for leave to add nonproductive time allegations

to their complaint on June 22, 2015, *Arredondo v. Delano Farms Company*, No. 1:09-cv-01247-MJS (E.D. Cal.).**[1]**

Still another carve-out provision precludes the use of the safe harbor as an affirmative defense by a defendant facing:

> [c]laims for paid rest or recovery periods or pay for other nonproductive time that were made in any case filed prior to April 1, 2015, when the case contained by that date an allegation that the employer has intentionally stolen, diminished, or otherwise deprived employees of wages through the use of fictitious worker names or names of workers that were not actually working.

Cal. Lab. Code § 226.2(g)(5). This carve-out prevents Fowler from asserting the safe harbor as an affirmative defense in a class action suit filed against it by the UFW on March 17, 2015, *Aldapa v. Fowler Packing Co., Inc.*, No. 1:15-cv-00420-JAM-SAB (E.D. Cal.). According to Plaintiffs, the class actions against Fowler, Gerawan, and Delano are the only three pending wage and hour class actions filed by the UFW in seven years before the filing of Plaintiffs' complaint.**[2]**

---

**[1]** The district court in *Arredondo* denied the plaintiffs' motion for leave to amend on October 22, 2015, twelve days after AB 1513 was signed into law.

**[2]** Defendants note that one other case was pending at the time of AB 1513's enactment in which nonproductive time allegations were asserted, *Moreno v. Castlerock Farming and Trans., Inc.*, 1:12-cv-0056-AWI-JTL (E.D. Cal.), which was filed on April 10, 2012. We take judicial notice of the fact that this case was filed and that a nonproductive time claim was

Plaintiffs' complaint also sets forth allegations relating to AB 1513's legislative history.  According to the complaint, late in the 2014 legislative term, a bill that established the safe harbor, but one without any of the carve-outs, was proposed to the California legislature.  That bill was never formally introduced.  On March 5, 2015, an initial version of AB 1513 was introduced.  This initial version did not address piece-rate compensation or the *Gonzalez* or *Bluford* decisions; it instead addressed an unrelated labor issue.  On August 27, 2015, a new version of AB 1513 was re-introduced.  Bearing no resemblance to its initial version, the new AB 1513 contained the carve-out provisions challenged here.  The new AB 1513 was a result of "closed negotiations" between the California Labor and Workforce Development Agency, labor unions including the UFW, and employer groups.  Assemblymember Das Williams presented the bill to the legislature with sixteen days left in the 2015 session, a fact that prompted one Senator to comment that "not only is the ink wet, there's no ink on the paper on some of these issues that have been surfaced that are . . . core, fundamental issues."  Plaintiffs allege, based on a September 30, 2015, article published in the *Sacramento Bee*, which they attached to their complaint, that the carve-outs were demanded by the UFW as necessary conditions to obtain UFW's support for the safe harbor provision.  Plaintiffs also allege that UFW sought the carve-outs as retribution for Gerawan's resistance in contractual negotiations with the union.

---

alleged.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Defendants asserted at oral argument that there were additional cases that fell within the carve-outs, but they have not provided the Court with any information about such cases.

Plaintiffs' complaint asserts federal constitutional claims, contending that AB 1513's carve-outs violate the prohibition against bills of attainder as well as the Equal Protection Clause. It also asserts a claim under Article IV, Section 16 of the California Constitution. The district court dismissed all three claims with prejudice. It dismissed the California Constitution claim because the court lacked jurisdiction to address it. *See Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). The district court dismissed the bill of attainder claim on the grounds that AB 1513's carve-outs did not amount to punishment and the legislative record did not show an intent to punish. And the district court dismissed the Equal Protection Clause claim on the grounds that the carve-outs were reasonably related to a legitimate government interest. Plaintiffs timely appeal the dismissal of their federal claims only. We therefore address the bill of attainder and equal protection claims, but need not address the claim under the California Constitution.

## II

We review the district court's order dismissing Plaintiffs' complaint *de novo*. *Brewster v. Sun Trust Mortg., Inc.*, 742 F.3d 876, 877 (9th Cir. 2014). We must determine whether Plaintiffs' complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "In doing so, we accept as true all factual allegations and determine whether they are sufficient to state a claim for relief; we do not, however, accept as true allegations that are conclusory. . . . [The f]actual allegations must be enough to raise a right to relief above the speculative level." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) (citation and internal quotation marks omitted).

## III

We first consider whether the district court erred in dismissing Plaintiffs' claim under the Equal Protection Clause. We conclude that it did.

The parties agree, as do we, that AB 1513 implicates no suspect class or fundamental right. As a result, we scrutinize the carve-outs using rational basis review. *Romero-Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir. 2013). This analysis asks whether "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993). This inquiry is not a "license for courts to judge the wisdom, fairness, or logic of legislative choices"; if we find a "plausible reason[] for [California's] action, our inquiry is at an end," and we must affirm the dismissal of this claim. *Id.* at 313–14 (internal quotation marks omitted).

Plaintiffs argue that AB 1513 fails to satisfy rational basis review because the only reason the carve-outs were included in the final bill was to procure the support of the UFW. As Defendants conceded at oral argument and as we conclude, if that is the only justification for the carve-outs, that justification alone does not survive constitutional scrutiny. Plaintiffs have plausibly alleged that the cut-off dates in sections (g)(2) and (g)(5) were included in AB 1513 for only that illegitimate purpose. Each cut-off date corresponds, within a matter of weeks (or even a matter of days), to the corresponding filing dates of the cases against Fowler, Gerawan, and Delano. Accepting Plaintiffs' allegations as true, as we must at this stage of the litigation, we can conceive of no other reason why the California legislature

would choose to carve out these three employers other than to respond to the demands of a political constituent.[3]

We must, however, consider the justifications Defendants offer. With respect to section (g)(2)(A), Defendants contend that the government sought to protect expectations developed as a result of already-pending litigation and to prevent unlimited relief to employers. We need not question the legitimacy of such a justification. Although we defer to legislatures in the necessary process of regulatory line-drawing, *Beach Communications*, 508 U.S. at 315–16, legislatures may not draw lines for the purpose of arbitrarily excluding individuals, *see Merrifield v. Lockyer*, 547 F.3d 978, 991–92 (9th Cir. 2008) (holding that a California statute excluding certain workers from an exemption from licensing requirements violated the Equal Protection Clause because the exclusion was not rationally related to a legitimate

---

[3] We recognize, as stated in the famous quotation often attributed to Bismarck, that laws are like sausages, in that it is better not to see them being made. So too courts rarely inquire into the sausage-making of political compromise. Equal protection doctrine reflects this attitude—outside of the infringement of fundamental rights and suspect class-based discrimination—by asking us to imagine any conceivable basis supporting a law, even if not advanced by the government. *E.g.*, *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 463 (1988) (in rational basis review, the court is "not bound by explanations of the statute's rationality that may be offered by litigants or other courts"); *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (under the rational basis test, "[w]here, as here, there are plausible reasons for Congress' action, our inquiry is at an end. It is, of course, constitutionally irrelevant whether this reasoning in fact underlay the legislative decision" (internal quotation marks omitted)). We accept these principles. But here, we cannot imagine a plausible legitimate basis for the package of legislative classifications set by the legislature in AB 1513's carve-outs, which requires us to conclude that Plaintiffs have alleged a plausible equal protection claim.

government interest). This is exactly what AB 1513, as alleged, does to Plaintiffs. Because Plaintiffs have plausibly alleged that the choice of cut-off dates can only be explained as a concession to the UFW in exchange for its support for AB 1513, section (g)(2) does not reasonably further this suggested justification.

Subsection (g)(2)(B)'s language supports this point. That subsection limits the section (g)(2) carve-out to only those claims in which "[t]he claim was asserted against a defendant named with specificity and joined as a defendant, other than as an unnamed (DOE) defendant pursuant to Section 474 of the Code of Civil Procedure, in the pleading referred to in subparagraph (A), or another pleading or amendment filed in the same action prior to January 1, 2015." Cal. Lab. Code § 226.2(g)(2)(B). Appellees offer no explanation for this subsection. They suggest no justification in their briefing and could not explain the provision when asked about it during oral argument.[4] We also cannot conceive of any legitimate justification for this perplexing provision, except that it was tailored to keep other employers from being carved out of the safe harbor being denied to Fowler, Gerawan, and Delano.

The justifications Defendants offer in explanation of section (g)(5) are also insufficient to support dismissal of Plaintiffs' equal protection claim. Defendants assert that damages in "ghost worker" claims are more difficult to calculate and that the legislature may not have wanted to extend relief to employers who use ghost workers to engage in wage theft. But ghost worker claims are completely

---

[4] *See* Oral Arg., *Fowler Packing Co., Inc. v. Lanier*, No. 16-16236 (November 16, 2016), at 25:22–27:22, https://www.youtube.com/watch?v=mSn643L1YhA.

irrelevant to AB 1513's safe harbor, which deals with claims of underpayment as a result of failing to pay for nonproductive work time. It would be no less rational to base the ability of a defendant to use the safe harbor on the grounds of whether that defendant has ever received a speeding ticket.

Moreover, section (g)(5)'s reliance on particular allegations directed to a completely unrelated claim as the basis for denying an affirmative defense further supports the inference that its purpose is to target the class action against Fowler. We could understand if California wanted to prevent employers who stole employees' wages by using ghost worker manipulation from enjoying the benefits of the safe harbor in an unrelated claim because they have engaged in particularly wrongful conduct. But section (g)(5) does no such thing. It excludes employers from the safe harbor based on mere *allegations* made against them, even if those allegations turn out to be completely frivolous.

As a final matter, we note that Defendants' offered justification does not explain why section (g)(5) uses a cut-off date different from that used in section (g)(2). Again, we cannot conceive of a legitimate interest that would explain this decision.

Accepting Plaintiffs' allegations as true, the only conceivable explanation for AB 1513's carve-outs is that they were necessary to procure the UFW's support in passing that legislation. Because that justification would not survive even rational basis scrutiny, we conclude that Plaintiffs' complaint plausibly states a claim that those provisions violate the Equal Protection Clause.

## IV

We next address Plaintiffs' bill of attainder claim. Article I, Section 10, Clause 1 of the United States Constitution provides that, "[n]o State shall . . . . pass any Bill of Attainder."**[5]** A bill of attainder is a "law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977). For purposes of this analysis, we assume without deciding that corporations may seek the protection of the Bill of Attainder Clauses—a proposition not yet endorsed by this circuit. *See SeaRiver*, 309 F.3d at 668 n.3 (assuming without deciding that the Article I, Section 9 Bill of Attainder Clause protects corporations).

The Supreme Court has identified three elements of a bill of attainder claim: "[1] specification of the affected persons, [2] punishment, and [3] lack of a judicial trial." *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 847 (1984). "In judging the constitutionality of [the challenged legislation], we may only look to its terms, to the intent expressed by [members of the legislature] who voted [for] its passage, and to the existence or nonexistence of

---

**[5]** We note that much of the relevant case law interpreting the term "bill of attainder" does so in the context of Article I, Section 9, Clause 3 of the Constitution. That provision prohibits the federal government from enacting bills of attainder. Plaintiffs assert a violation of Article I, Section 10, Clause 1, which prohibits states from enacting bills of attainder. We see no reason, however, why the same term should be treated differently when applied to state legislatures, at least in the context of this case. *See SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 622, 672 n.6 (9th Cir. 2002). We refer to these two constitutional provisions together as the "Bill of Attainder Clauses."

legitimate explanations for its apparent effect." *SeaRiver*, 309 F.3d at 673 (internal quotation marks omitted). We conclude that AB 1513's carve-outs do not impose punishment and we need not address whether they satisfy the other two elements of a bill of attainder claim.

The Supreme Court has also identified three "necessary inquiries" that can indicate whether a law inflicts punishment for purposes of the Bill of Attainder Clauses: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a congressional intent to punish.'" *Selective Service*, 468 U.S. at 852 (quoting *Nixon*, 433 U.S. at 473, 475–76, 478). We must consider these three inquiries together, none of which is by itself necessary or dispositive. *SeaRiver*, 309 F.3d at 673. Further, as case law requires, we must view the law functionally as we engage in this analysis. *E.g.*, *Selective Service*, 468 U.S. at 852 ("It is . . . apparent that, though the governing criteria for an attainder may be readily indicated, 'each case has turned on its own highly particularized context.'" (quoting *Flemming v. Nestor*, 363 U.S. 603, 616 (1960)). In so doing, we conclude that the carve-outs do not impose punishment. Any liability Plaintiffs face in the class action cases being pursued against them is a result of judicial interpretations of pre-existing California law, not any action by the legislature linked to the passage of AB 1513. For that reason, AB 1513 cannot be held to impose punishment.

First, the carve-outs do not fall within the historical meaning of legislative punishment, which includes execution, imprisonment, banishment, punitive confiscation of property,

and the prohibition of "participation by individuals or groups in specific employments or professions." *Selective Service*, 468 U.S. at 852; *see also id.* at 852 n.9 (collecting cases). A law making a defendant ineligible to assert an affirmative defense in a civil lawsuit simply does not fit within that category of legislative action.

The second inquiry, which "ensure[s] that the [l]egislature has not created an impermissible penalty not previously held" to constitute punishment, *id.* at 853, requires us to engage in a "functional test" by asking "whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes," *Nixon*, 433 U.S. at 475–76. As discussed above, Plaintiffs have plausibly alleged that the only justification that reasonably explains California's choice of cut-off dates is that it capitulated to the political demands of the UFW. And as Defendants have conceded, that is not a legitimate government interest. Moreover, section (g)(5) exempts companies from the safe harbor based on allegations of unrelated conduct. Because neither section (g)(2) nor (g)(5) can be said to further a legitimate government interest, it is at least conceivable that the California legislature intended to punish Plaintiffs by carving them out of AB 1513's safe harbor.

Third, we consider "whether the legislative record is probative of nonpunitive intentions or instead evidences legislative overreaching that enlivens 'the fear that the legislature, in seeking to pander to an inflamed popular constituency,' found it 'expedient openly to assume the mantle of judge—or, worse still, lynch mob.'" *SeaRiver*, 309 F.3d at 676 (quoting *Nixon*, 433 U.S. at 480). Outright statements of punitive intent are not necessary; instead, we

look for evidence permitting an inference of punitive intent. *See Nixon*, 433 U.S. at 480 ("We, of course, do not suggest that such a formal legislative announcement of moral blameworthiness or punishment is necessary to an unlawful bill of attainder."). The only allegations in Plaintiffs' complaint relevant to this analysis are (1) the last-minute nature of AB 1513's enactment and (2) post-enactment statements purportedly made by Assemblymember Williams.[6] With respect to the first, "departure from established legislative procedures may suggest an improper purpose." *SeaRiver*, 309 F.3d at 677. The fact that Assemblymember Williams may have introduced AB 1513 only sixteen days before the end of the session, however, does not appear to be an unusual path to enactment. Legislative compromise can at times be hard fought, and it would be unwise to infer bad intent simply because negotiations were prolonged but ultimately successful.

The second set of allegations, the post-enactment statements purportedly made by Assemblymember Williams, suggests that the carve-outs were motivated by political expediency, but not, in our view, an intent to punish. According to Plaintiffs' allegations, Assemblymember Williams stated that the carve-outs were necessary to

---

[6] Defendants argue that we may not consider allegations concerning the post-enactment statements because they are outside the formal legislative record. Plaintiffs respond that we may consider such allegations because they are probative of the intent that motivated the carve-outs. We agree with Plaintiffs that post-enactment statements by the sponsoring member of the legislature are pertinent to this assessment because they allow insight into the legislature's intent. *See Nixon*, 309 F.3d at 484 ("In judging the constitutionality of the Act, we may . . . look . . . to the intent expressed by Members of [the legislature] who voted [for] its passage . . . .").

maintain the support of labor, and that "[f]rom [his] perspective, if we're going to create a grand compromise that helps most growers and helps most workers, you don't want to let it get blown up because there's somebody who's a potential bad actor." These statements support the contention that the carve-outs served only as a concession to the UFW in exchange for its support for AB 1513 as a whole. While such intent does not align with a legitimate justification for a law, it is distinct from an intent to *punish*. An intent to punish must be accompanied by the imposition of some sort of harm on certain individuals, and the carve-outs do no such thing. Stated another way, the carve-outs do not punish Plaintiffs; rather, it is the pre-existing law that creates the monetary exposures for Plaintiffs to the extent they violated wage laws. While the novel issue is not clear cut, the weight of precedent leads us to conclude AB 1513 by its carve-outs imposes no punishment. This is fatal to Plaintiffs' bill of attainder claim. Before AB 1513's enactment, Plaintiffs faced class action litigation regarding their purported failure to meet the minimum wage requirements set by California law. After AB 1513's enactment, Plaintiffs face the exact same potential liability. AB 1513 neither changes the law governing Plaintiffs' litigation, nor the amount of potential liability they face.

Plaintiffs argue that AB 1513 places a "functional burden" on them because their competitors now avoid costly litigation and statutory fees using the safe harbor. We first note that such an argument is much more appropriate in the context of an equal protection challenge because it challenges the reason a legislature subjected one group to a particular policy, but not another. Second, denying certain individuals a benefit that had not previously existed is not an imposition of punishment. *See Flemming*, 363 U.S. at 617. To be sure,

a plaintiff need not be *entitled* to the benefit denied her by a bill of attainder. *See, e.g.*, *United States v. Brown*, 381 U.S. 437 (1965) (holding that a law barring Communist Party members from offices in labor unions is a bill of attainder). But the benefit at issue must have been in some way available to the plaintiff before the enactment of the law being challenged. Because the safe harbor was never available to Plaintiffs in the first place, they cannot claim they have been punished by being excluded from AB 1513's protections.

Viewing the effect of AB 1513's carve-outs functionally, we conclude AB 1513's carve-outs do not impose punishment upon Plaintiffs. Because punishment is a necessary element of a bill of attainder, the district court properly dismissed this claim.

**V**

The district court erred in dismissing Plaintiffs' equal protection claim, but correctly dismissed Plaintiffs' bill of attainder claim. We **AFFIRM** in part and **REVERSE** in part, and **REMAND** for further proceedings.

Each party shall bear its own costs.