**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLIED CONCRETE AND SUPPLY CO., a California corporation; CALPORTLAND COMPANY, a California Corporation; GARY BALE REDI-MIX CONCRETE, INC., a California corporation; HOLLIDAY ROCK CO., INC., a California corporation; NATIONAL READY MIXED CONCRETE CO., a California corporation; ROBERTSON'S READY MIX, LTD., a California limited partnership; SPRAGUES ROCK AND SAND COMPANY, a California corporation; SUPERIOR READY MIX CONCRETE L.P., *Plaintiffs-Appellees*, | No. 16-56546 <br><br> D.C. No. CV 16-4830 RGK |

v.

CHRISTINE BAKER, in her official capacity as the Director of the Department of Industrial Relations of the State of California; JULIE A. SU, in her official capacity as Labor Commissioner of the State of California, Division of Labor Standards Enforcement,
<em>Defendants</em>,

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,
    *Intervenor-Defendant-Appellant.*

ALLIED CONCRETE AND SUPPLY
CO., a California corporation;
CALPORTLAND COMPANY, a
California Corporation; GARY
BALE REDI-MIX CONCRETE, INC., a
California corporation; HOLLIDAY
ROCK CO., INC., a California
corporation; NATIONAL READY
MIXED CONCRETE CO., a
California corporation;
ROBERTSON'S READY MIX, LTD., a
California limited partnership;
SPRAGUES ROCK AND SAND
COMPANY, a California
corporation; SUPERIOR READY MIX
CONCRETE L.P.,
                *Plaintiffs-Appellees*,

                v.

CHRISTINE BAKER, in her official
capacity as the Director of the
Department of Industrial Relations
of the State of California; JULIE A.
SU, in her official capacity as
Labor Commissioner of the State
of California, Division of Labor
Standards Enforcement,
                *Defendants-Appellants.*

No. 17-55343

D.C. No.
CV 16-4830 RGK

ALLIED CONCRETE AND SUPPLY
CO., a California corporation;
CALPORTLAND COMPANY, a
California Corporation; GARY
BALE REDI-MIX CONCRETE, INC., a
California corporation; HOLLIDAY
ROCK CO., INC., a California
corporation; NATIONAL READY
MIXED CONCRETE CO., a
California corporation;
ROBERTSON'S READY MIX, LTD., a
California limited partnership;
SPRAGUES ROCK AND SAND
COMPANY, a California
corporation; SUPERIOR READY MIX
CONCRETE L.P.,
          *Plaintiffs-Appellants*,

                    v.

CHRISTINE BAKER, in her official
capacity as the Director of the
Department of Industrial Relations
of the State of California; JULIE A.
SU, in her official capacity as
Labor Commissioner of the State
of California, Division of Labor
Standards Enforcement,
          *Defendants-Appellees*.

No. 17-55503

D.C. No.
CV 16-4830 RGK

OPINION

Appeals from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted March 7, 2018
Pasadena, California

Filed September 20, 2018

Before:  A. Wallace Tashima, Richard A. Paez,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Labor Law

The panel affirmed in part and reversed in part the district court's judgment and remanded in an action brought by a group of ready-mix concrete suppliers, challenging California Labor Code § 1720.9, which amended California's prevailing wage laws to include delivery drivers of ready-mix concrete.

The district court denied a motion of the International Brotherhood of Teamsters ("IBT") to intervene on the side of the State to defend the law, and it granted the State's motion to dismiss plaintiffs' claim that § 1720.9 was preempted by the Federal Aviation Administration Authorization Act. The

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

district court granted summary judgment in favor of plaintiffs on their claim that § 1720.9 violated the Equal Protection Clause of the Fourteenth Amendment, ruling that, under the rational basis test, there were no legally relevant differences between ready-mix drivers and other delivery drivers; therefore, the State did not have any legitimate justification for singling out the ready-mix suppliers.

Reversing the district court's grant of summary judgment in favor of plaintiffs on their equal protection claim, the panel concluded that the district court wrongly disregarded as irrelevant certain differences between ready-mix drivers and other drivers that the legislature could have relied on in extending the prevailing wage law. The panel explained that the California Supreme Court has stated that prevailing wage laws further goals such as: (1) generally protecting employees on public works projects, (2) benefitting the public through the superior efficiency of well-paid employees, and (3) permitting union contractors to compete with nonunion contractors. The panel held that the legislature could have rationally concluded that extending the prevailing wage law to ready-mix drivers ahead of other drivers would further these respective goals because ready-mix drivers: (1) are more integrated into the construction process than other materials drivers and should be paid accordingly; (2) are more skilled than other drivers and provide a material that is more important to public works projects than other materials such that paying the prevailing wage will attract superior drivers and improve public works; and (3) are more likely to be unionized and, therefore, vulnerable to underbidding.

Reversing the district court's denial of IBT's motion to intervene, the panel held that the union had a significantly protectable interest at stake in the case. The panel concluded

that IBT's appeal was not moot in light of the reversal on the equal protection claim.

The panel affirmed the district court's dismissal of plaintiffs' claim of FAAAA preemption because the prevailing wage law was not related to prices, routes, and services within the meaning of the FAAAA's preemption clause.

## COUNSEL

Ken Lau (argued), Assistant Chief Counsel; Christopher Jagard, Chief Counsel; Office of the Director—Legal Unit, Department of Industrial Relations, Oakland, California; John J. Korbol and Mi Kim, Counsel, Office of the Director—Legal Unit, Department of Industrial Relations, Los Angeles, California; for Defendants-Appellants/Cross-Appellees.

Michael G. Yoder (argued) and Christopher S. Whittaker, O'Melveny & Myers LLP, Newport Beach, California; Anton Metlitsky, O'Melveny & Myers LLP, New York, New York; for Plaintiffs-Appellees/Cross-Appellants.

Scott A. Kronland (argued), Stacey M. Leyton, and Eric P. Brown, Altshuler Berzon LLP, San Francisco, California, for Intervenor-Defendant-Appellant/Amicus Curiae.

Kerry Shapiro, Jon Wilner, and Matthew J. Sanders, Jeffer Mangels Butler & Mitchell LLP, San Francisco, California, for Amicus Curiae California Construction and Industrial Materials Association.

**OPINION**

TASHIMA, Circuit Judge:

California's general prevailing wage laws ensure that workers employed on public works projects are paid a minimum wage. In 2015, California amended the prevailing wage laws to include delivery drivers of ready-mix concrete. Cal. Lab. Code § 1720.9.

A group of ready-mix concrete suppliers (collectively, "Plaintiffs") challenged § 1720.9, alleging that it violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ("equal protection claim") and that the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") preempted the state law. The International Brotherhood of Teamsters ("IBT") moved to intervene on the side of the State to defend the law.

The district court denied IBT's motion to intervene and granted the State's motion to dismiss Plaintiffs' FAAAA preemption claim. However, the district court granted Plaintiffs' summary judgment motion on the equal protection claim, concluding that § 1720.9 did not pass muster under the rational basis test. The court reasoned that there were no legally relevant differences between ready-mix drivers and other delivery drivers; therefore, the State did not have any legitimate justification for singling out the ready-mix suppliers.

We conclude that the district court wrongly disregarded as irrelevant certain differences between ready-mix drivers and other drivers that the legislature could have relied on in extending the prevailing wage law. We thus reverse the

district court's grant of summary judgment in favor of Plaintiffs and order the court to enter judgment on behalf of Defendants.  Likewise, we hold that IBT had a significantly protectable interest at stake in the case and we reverse the district court's denial of IBT's motion for leave to intervene. On the FAAAA preemption question, we affirm the district court's dismissal of Plaintiffs' claim.

## BACKGROUND

## 1.  Prevailing Wage Laws and California Labor Code § 1720.9

California's prevailing wage law establishes the minimum wage that workers employed on "public works" must receive. *See* Cal. Lab. Code §§ 1720, 1771.  "Public works" is generally defined as construction or related work, done under contract, and paid for in any part out of public funds.  *Id*. § 1720(a)(1).  The California Supreme Court has described the purpose of the general prevailing wage law:

> The overall purpose of the prevailing wage law . . . is to benefit and protect employees on public works projects.  This general objective subsumes within it a number of specific goals: to protect employees from substandard wages that might be paid if contractors could recruit labor from distant cheap-labor areas; to permit union contractors to compete with nonunion contractors; to benefit the public through the superior efficiency of well-paid employees; and to compensate nonpublic employees with higher wages for the absence of job security

and employment benefits enjoyed by public employees.

*Lusardi Constr. Co. v. Aubry*, 824 P.2d 643, 649 (Cal. 1992).

The California Director of Industrial Relations (the "Director") publishes the prevailing wage rates and enforces the law by collecting payroll (and other related) records from employers. Cal. Lab. Code §§ 1771.4, 1776. Further, when there is a question about the applicability of the prevailing wage law, the Director determines "whether a specific project or type of work is a public work." *Id.* at § 1773.5(b); *see also id.* § 1773(c) (establishing administrative appeal process). When there is a dispute, courts may also review whether a worker is entitled to prevailing wages. *See, e.g.*, *Williams v. SnSands Corp.*, 67 Cal. Rptr. 3d 606 (Ct. App. 2007); *O.G. Sansone Co. v. Dep't of Transp.*, 127 Cal. Rptr. 799 (Ct. App. 1976). Courts and the Director both ask whether the worker's task was "functionally related to the process of construction," and "an integrated aspect of the 'flow' process of construction." *O.G. Sansone*, 127 Cal. Rptr. at 804; *see also A&A Ready Mix Concrete*, Public Works Case No. 99-037 (Dep't of Indus. Relations Apr. 10, 2000).

On October 10, 2015, Governor Edmund G. Brown, Jr., signed AB 219, which amended California's prevailing wage law by adding Labor Code §1720.9. It provides that "public works" include "the hauling and delivery of ready-mixed concrete to carry out a public works contract" regardless of who employs the driver or whether the driver is delivering from a dedicated batch plant. Cal. Lab. Code § 1720.9. Therefore, all ready-mix drivers delivering to public works must be paid prevailing wages. Before adopting the final bill, the California Legislature considered a version of AB 219

that would have required payment of prevailing wages to asphalt delivery drivers as well, but ultimately limited the expansion to ready-mix concrete drivers.

Ready-mix concrete is defined as "concrete that is manufactured in a factory or a batching plant, according to a set recipe, and then delivered in a liquefied state by mixer truck for immediate incorporation into a project." *Id.* § 1720.9(b). Its ingredients are prepared and mixed at a concrete plant. Production of concrete is time-sensitive because concrete begins to set quickly after water is added. Ready-mix is delivered in specialized trucks with a rotating tank. *Id.* Drivers of ready-mix trucks control the amount of water added to the rotating tank and the speed at which the tank spins, meaning that they can alter the nature of the concrete.[1] By contrast, even though asphalt delivery may also be time-sensitive, drivers transport asphalt in dump trucks, rather than mixing trucks, and drivers cannot alter the asphalt once it is in the truck. For certain projects, such as paving roads, asphalt and ready-mix are interchangeable, for others, such as building walls and other structural supports, the materials are not substitutes.

## 2.  Procedural Background

On June 30, 2016, Plaintiffs filed a complaint against the Director and the Labor Commissioner of the State of California (collectively, the "State").[2] The Complaint alleged

---

[1] The ready-mix drivers do not always have discretion to decide how much water to add, but must follow instructions from engineers.

[2] Plaintiffs also sued Governor Brown, but later dismissed the case as to him.

that § 1720.9 violates the Equal Protection Clause of the Constitution, or alternatively, is preempted by the FAAAA, and sought injunctive and declaratory relief.  Before the State answered the complaint, IBT moved for leave to intervene, either as of right or permissively.  *See* Fed. R. Civ. P. 24(a) & (b).  On August 22, 2016, Plaintiffs sought a preliminary injunction on their equal protection claim.  Before the court ruled on Plaintiffs' motion for injunctive relief, the State moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Subsequently, in September, the district court denied IBT's motion to intervene, reasoning that:  (1) the union could not intervene by right because it did not have a significantly protectable interest in the case; and (2) that the union could not permissively intervene because it would cause a delay and the State could protect any interests IBT may have.  IBT appealed the denial of its motion to intervene.

On October 18, 2016, the district court granted Plaintiffs' motion for a preliminary injunction on the equal protection claim, finding that § 1720.9 was not likely to survive rational basis review.[3]  In December, the district court granted the State's motion to dismiss Allied Concrete's FAAAA claim, but denied the motion as to the equal protection claim.  Allied Concrete appealed the dismissal of its FAAAA claim.

Thereafter, Plaintiffs moved for summary judgment and requested that the temporary injunction be made permanent. The district court, holding that § 1720.9 violated the Equal Protection Clause, permanently enjoined the statute's

---

[3] The State appealed the  preliminary injunction,  but the subsequent entry of the permanent injunction mooted that appeal.

application and enforcement.  First, the district court defined the classification in § 1720.9 as treating "ready-mixed concrete drivers differently than other materials drivers." And, although the district court credited the State's evidence as to the differences between ready-mix drivers and drivers of other materials, it concluded  – without explanation – that those differences were immaterial because "all that matters for inclusion in the [prevailing wage law] is whether or not drivers are hauling and delivering construction materials to public works sites."  Thus, the district court concluded that "in all respects *relevant* to the [prevailing wage law], ready-mixed concrete drivers and other materials drivers are similarly situated."  Recognizing that the State's interests may be legitimate, the district court nevertheless struck down the statute because the classification was "arbitrary" and not rationally related to any of the interests.  The State appealed.

## STANDARD OF REVIEW

We review *de novo* grants of summary judgment and dismissals.  *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1271 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 2709 (2018); *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013).

We consider *de novo* whether a motion to intervene of right should have been granted, *Canatella v. California*, 404 F.3d 1106, 1112 (9th Cir. 2005), and, if necessary, review for abuse of discretion a denial of permissive intervention, *id.* at 1117.

## DISCUSSION

### 1.      Equal Protection

The parties agree that the rational basis test applies. Therefore, § 1720.9 "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993).   Non-suspect classifications are

> constitutionally valid if there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.

*Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012) (internal quotation marks omitted); *see also Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1031 (9th Cir. 2010) ("[A] state action need not *actually* further a legitimate interest; it is enough that the governing body '*could have rationally decided* that' the action would further that interest." (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981))).   "Further, because the classification is presumed constitutional, the burden is on the [party] attacking the legislative arrangement to negative every conceivable basis which might support it." *Armour*, 566 U.S. at 681 (internal quotation marks omitted); *see also Clover Leaf Creamery Co.*, 449 U.S. at 464 ("[P]arties challenging legislation under the Equal Protection Clause . . . cannot

prevail so long as it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable." (second alteration in original ) (internal quotation marks and citations omitted)); *Vance v. Bradley*, 440 U.S. 93, 111 (1979) ("[T]hose challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.").

We disagree with the district court's conclusion that the differences between ready-mix drivers and other delivery drivers is immaterial for the purposes of the prevailing wage law. As mentioned above, the California Supreme Court has stated that prevailing wage laws further goals such as: (1) generally protecting employees on public works projects, (2) benefitting the public through the superior efficiency of well-paid employees, and (3) permitting union contractors to compete with nonunion contractors. *See Lusardi*, 824 P.2d at 649. The legislature could have rationally concluded that extending the prevailing wage law to ready-mix drivers ahead of other drivers would further these respective goals because ready-mix drivers:  (1) are more integrated into the construction process than other materials drivers and should be paid accordingly; (2) are more skilled than other drivers and provide a material that is more important to public works projects than other materials such that paying the prevailing wage will attract superior drivers and improve public works; and (3) are more likely to be unionized and, therefore, vulnerable to underbidding.[4]  Plaintiffs have not met their

---

[4] Each of these justifications is alone sufficient to survive the rational basis test. The State and IBT present us with several other potential

high burden of convincing us that these legislative facts "could not reasonably be conceived to be true by the governmental decisionmaker." *Bradley*, 440 U.S. at 111. The legislative facts are at least debatable and the classification rationally related to furthering the purposes of the prevailing wage law; as such, the statute survives the rational basis test.[5]  *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 320 (1993).

## A.  Benefit Employees on Public Works Projects

First, "[t]he overall purpose of the prevailing wage law . . . is to benefit and protect employees on public works projects." *Lusardi*, 824 P.2d at 649.  In extending the prevailing wage law to benefit ready-mix drivers, the legislature could have rationally decided that the delivery of ready-mix to a public work is part of the "flow of construction" and should be compensated as such.  Not only would this protect the ready-mix drivers, but if the legislature believed that the ready-mix drivers were actually more integrated in construction, the payment of prevailing wages

---

justifications, but we need not reach those and offer no opinion on whether they would save the challenged statute.

**[5]** Undergirding our analysis is the idea that the legislature is permitted to act incrementally in dealing with perceived problems. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam) ("Legislatures may implement their program step by step in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations." (citations omitted)); *see also Ry. Express Agency v. New York*, 336 U.S. 106, 110 (1949) ("It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." (citing *Cent. Lumber Co. v. South Dakota*, 226 U.S. 157, 160 (1912))).

could increase efficiency in public works projects by attracting higher-skilled workers.

Specifically, the legislature could have concluded that the ready-mix drivers are more integrated into the flow of construction because they bring a perishable commodity to a construction site, and, in certain instances, need to incorporate it immediately. During legislative hearings on the bill, an IBT representative testified:

> These workers are part of the construction process. That's what's different and unique about this from any other material coming to the job site. You can . . . it's not dumping a load of lumber or a bag of nails or whatever and leaving. They bring this commodity—which is perishable—and [it] has to be incorporated immediately and the driver participates in the incorporation process with the workers. They are part of it. They move the truck. They operate levers and equipment that moves the concrete and the rate of flow in conjunction with the construction workers. They are integral to the process.

At least some of the legislators were impressed by this perceived difference from other materials. As one legislator stated: "I will be supporting the bill today. I do get the distinction between the product we're talking about and delivering in effect, dumping a delivery of pipes or paint or steel. This is a different commodity."

The conclusion that ready-mix drivers are more integral to the public works projects than other drivers because of the material's properties and the driver's tasks is rational on its face.    Therefore, it is up to Plaintiffs to negate this justification as inconceivable.  Plaintiffs attempt this through three arguments.  They first argue that the delivery of ready-mix is not any different than that of other materials.  For example, one contractor stated that "[f]rom [his] perspective as a contractor, there is no meaningful difference between the delivery of ready-mixed concrete . . . and the delivery of any other construction material . . . .  Approximately 95% of the time, all of the [ready-mix] goes into a single pump that [his] employees than [sic] use to place the concrete."  While this argument raises a factual dispute with the testimony from IBT's witness, quoted above, it does not significantly weigh against the legislature conceivably concluding that ready-mix drivers are more important to the construction process based on the properties of the materials, the uniqueness of the trucks, and the driver's responsibilities upon arrival.  The legislature, where there is no suspect class at issue, has wide leeway to consider different, and potentially competing, facts. *See Armour*, 566 U.S. at 685 ("[T]he Constitution does not require the [government] to draw the perfect line nor even to draw a line superior to some other line it might have drawn. It requires only that the line actually drawn be a rational line.").

Next, Plaintiffs argue that the legislature could not rationally conclude that ready-mix drivers were more integrated into the flow of construction than other drivers because the Director had previously found that the drivers were not always entitled to prevailing wages under the pre-§ 1720.9 test.  In *A&A Ready Mix Concrete*, the Director concluded that ready-mix drivers delivering the material, but

not performing on-site construction work, were not part of the flow of construction.  Plaintiffs argue that this administrative ruling undercuts any factual basis for the legislature to have decided otherwise.  This argument fails for several reasons. First and foremost, the legislature is not bound to accept the findings of an administrative agency.  Legislatures frequently change laws in response to administrative (or judicial) decisions with which they do not agree.  As such, this decision of the agency is of little relevance to our analysis.

Finally, Plaintiffs argue that extending the prevailing wage to all ready-mix drivers is overbroad because not all ready-mix drivers are sufficiently integral to the flow of construction.  For example, Plaintiffs contend that not all drivers incorporate the ready-mix, and that even if they do, this would not necessarily support higher wages for the drive time.  Again, Plaintiffs question where the legislature drew the line.  But, for the reasons stated above, the legislature could have rationally concluded that ready-mix drivers were more integral to public works than other drivers and that the drive time – when the driver controls the rate of rotation and the amount of water in the drum – is part of the construction.

## B.  Ensure Superior Projects

Second, another goal of the prevailing wage law is to "benefit the public through the superior efficiency of well-paid employees."  *Lusardi*, 824 P.2d at 649.  The State offers that the legislature may have decided that the unique aspects of a ready-mix driver's job, and the nature of ready-mix as a material for structural projects such as buildings, bridges, and dams (as opposed to roads), make the quality of ready-mix drivers more important to public works projects than other drivers.  This argument rests on two premises that Plaintiffs

challenge:    (1) that ready-mix drivers have unique responsibilities that are more important to the success of a public works project; and (2) that ready-mix is more often used in "structural" projects.

As to the first premise, there are clear differences between ready-mix drivers and other materials drivers relevant to the equal protection analysis.  Ready-mix drivers use specialized trucks, with a rotating mixing drum, whereas asphalt drivers use dump trucks.  Ready-mix drivers can change the consistency of their load by adding water to the mixture or altering the speed of rotation of the drum.  Further, ready-mix drivers require more training than asphalt drivers and must carry a different driver's license endorsement than asphalt drivers.  It is conceivable that the legislature could have rationally believed these facts, determined that ready-mix drivers need more skills than other drivers, and concluded that prevailing wages would attract higher-quality workers.

Plaintiffs argue that there is no meaningful difference between the delivery of ready-mix and other materials.  For example, some contractors declare that ready-mix and asphalt drivers both merely drop the material where the contractors' employees tell the driver to dump it.  Plaintiffs further argue that both ready-mix and asphalt have a limited duration in which they must be delivered.  Finally, Plaintiffs argue that even though the ready-mix driver has the ability to add water to the mixture, he or she does not have *discretion* to do so. Instead, the drivers simply follow instructions from somebody else.

Nonetheless, the different licensing requirements and the ability of ready-mix drivers to control the cement in their trucks are rational grounds for distinguishing between them

and other drivers.  Further, even if ready-mix drivers do not have discretion to add water to the mixture, or change the speed of the rotating drum, they still must control these variables during the drive, which is not true for drivers of typical dump trucks.  Carefully following important instructions is itself a valuable skill.

As to the second premise, although it is true that many projects could interchange the materials depending on cost, there is evidence that ready-mix is used for structural support, such as walls or footings, more often than other materials.  By contrast, asphalt cannot be used as a structural material, and is most often used for paving.  It is easy to imagine a legislator concluding that a failed structure, such as a dam or bridge, is worse than a poorly-paved road.  Therefore, the legislature could have rationally concluded that ready-mix is more important to sensitive public works and that the drivers must be more skilled to ensure the integrity of the material they deliver.

Again, Plaintiffs cannot negate this justification.  Aside from arguing that ready-mix drivers are not any different than other drivers, Plaintiffs also contend that concerns about structural projects do not survive constitutional scrutiny because not all public works are structural projects.  But this argument cannot carry the day under rational basis review. *See Heller*, 509 U.S. at 321 ("[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends.").

## C. Protect From Underbidding

Third, another purpose of the prevailing wage law is "to permit union contractors to compete with nonunion contractors." *Lusardi*, 824 P.2d at 649. The district court, citing *Merrifield v. Lockyer*, 547 F.3d 978, 991 n.15 (9th Cir. 2008), however, rejected this argument: "[L]egislation passed for the *sole purpose* of protecting union employers from non-union competition will not pass constitutional muster." As we further explain below, *Merrifield* does not support the district court's conclusion. True, bare economic protectionism is not a valid justification for discriminatory treatment, but the interest in protecting union workers from underbidding conceivably is about ensuring a certain standard of worker – and avoiding a race to the bottom – rather than granting favors to politically important actors. *See O.G. Sansone*, 127 Cal. Rptr. at 813–14 (describing the maintenance of competition between union and non-union workers as one of the purposes of the federal prevailing wage law); *see also Indep. Roofing Contractors v. Dep't of Indus. Relations*, 28 Cal. Rptr. 2d 550, 557 (Ct. App. 1994) (recognizing the "declared public policy of [California] in favor of collective bargaining").

The State argues that the legislature could have rationally concluded that ready-mix drivers were more vulnerable to underbidding than other drivers because a higher percentage of ready-mix drivers are union workers. An IBT representative estimates that 95% of ready-mix drivers in the San Francisco area are working under collective bargaining agreements ("CBAs"), whereas "IBT has only one or two [CBAs] with contractors who are also commercial suppliers covering asphalt delivery in California." If unionized ready-mix drivers were underbid by a non-union supplier, 95% of

drivers in San Francisco would be ineligible for the job. Therefore, it seems reasonable that the legislature could have rationally believed that underbidding in the ready-mix market is more harmful and that § 1720.9 would further the interest in preventing underbidding.

Plaintiffs respond that underbidding by non-union drivers may be a problem, regardless of the material carried, and that the state has not provided any evidence that the disparity between union and non-union rates is greater for ready-mix drivers than other drivers. These arguments miss the mark. Just because underbidding may be an issue for drivers of other materials does not mean that the legislature could not have rationally concluded that the problem was more acute for ready-mix drivers due to their higher unionization rates. Second, the state is not required to produce empirical evidence to support the statute; it is Plaintiffs' burden is to negate conceivable justifications. *See Beach Commc'ns*, 508 U.S. at 315 ("[A] legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data.").

### D.  Not Bare Economic Protectionism

Plaintiffs contend that they have refuted all of the State's justifications and that the only explanation for § 1720.9 is that the legislature wanted to protect the suppliers of other materials from competition. Plaintiffs, however, have put forward no evidence that the legislature engaged in improper favoritism, and the Ninth Circuit cases that Plaintiffs cite are inapposite.

Plaintiffs rely on *Merrifield* for the premise that "economic protectionism for the sake of economic

protectionism is irrational with respect to determining if a classification survives rational basis review." 547 F.3d at 991 n.15. *Merrifield*, however, presented a unique set of facts distinguishable from those here. In *Merrifield*, a pest-control professional who did not use pesticides challenged, on due process grounds, the application of California's overall pesticide licensing scheme to him and other non-pesticide users. *Id.* at 987. We rejected the due process claim, reasoning that the state had a public safety interest in "requiring persons who do not use pesticides to learn about the risks of pesticides . . . because persons like [plaintiff] work in environments where they may be exposed to pesticides that have been applied previously and left on-site." *Id.* at 988.

The plaintiff in *Merrifield* also challenged, on equal protection grounds, the exemptions in the licensing scheme, which exempted pest-control professionals who dealt with bats, raccoons, skunks, and squirrels and did not use pesticides from the licensing requirement, but did not similarly exempt professionals who worked with mice, rats, or pigeons. *Id.* at 981–82. Applying the rational basis test, we struck down these selective exemptions. *Id.* at 991. We reasoned that the classification in the licensing scheme did not survive constitutional muster because it contradicted the very interest the State proffered to defeat the due process claim – public health concerns about exposure to pesticide. *See id.* ("We cannot simultaneously uphold the licensing requirement under due process based on one rationale and then uphold [plaintiff's] exclusion from the exemption based on a completely contradictory rationale."). The rationale was contradictory because those pest-control operators who worked with bats, rats, racoons, skunks, and squirrels were *more* at risk of being exposed to pesticides even if they did

not themselves use pesticides than similarly-situated operators who dealt with more-common pests like mice or rats. *Id.* at 991.

Plaintiffs also rely on *Fowler Packing Co. v. Lanier*, 844 F.3d 809, 816 (9th Cir. 2016). In *Fowler Packing*, we concluded, on a motion to dismiss, that plaintiffs had pleaded an equal protection claim because the only conceivable explanation for a portion of the challenged legislation was the need to win the political support of a particular labor union. *Id.* at 816. The legislation at issue in *Fowler Packing* "created a 'safe harbor' that gave employers an affirmative defense against" certain minimum wage claims. *Id.* at 811. However, there were carve outs from the safe harbor that only benefitted the labor union which had ongoing suits against employers. *Id.* at 815. These carve outs came in the form of cut-off dates that corresponded almost exactly to the filing dates of the labor union's cases against certain employers. *Id.* Accepting the plaintiffs' allegations as true, we held that they had alleged enough to survive a motion to dismiss.

Both cases are easily distinguishable from the situation here. Unlike in *Merrifield*, there is no suggestion that classifying ready-mix drivers as distinct from other drivers actually contradicts the purposes of the prevailing wage law. Similarly, there is no specific evidence like the cut-off dates in *Fowler Packing* that clearly suggests improper favoritism. Plus, the burden on Plaintiffs here to come forward with evidence that negates every conceivable basis for the law is much higher than that of the *Fowler Packing* plaintiffs opposing a motion to dismiss.

Finally, Plaintiffs emphasize the fact that asphalt was dropped from an earlier version of § 1720.9 as a sign that the

law's only justification is to protect ready-mix suppliers' competitors.  Without more, the fact that the legislature once considered including asphalt in the legislation is not evidence of improper motive.  In fact, considering asphalt, but then removing it after holding hearings, could just as easily bolster the conclusion that after reviewing the facts, the legislature reached an informed judgment.

Because Plaintiffs have not negated every conceivable justification for § 1720.9, we conclude that the statute passes the rational basis test and does not violate the Equal Protection Clause.

## 2.  Intervention

In a separate appeal, IBT challenges the district court's denial of its motion for leave to intervene as of right or by permission.  During oral argument, we raised the issue of whether IBT's appeal would be moot if we reversed the district court on the equal protection claim.  IBT argued that its appeal would not be moot because Plaintiffs could still move for rehearing en banc or petition for a writ of certiorari with the Supreme Court.

We are not aware of any decision from our Circuit that addresses whether a potential petition for rehearing or certiorari keeps a case alive for the purposes of appealing a motion to intervene.  The typical rule is that "[a]n appeal is moot if there exists no present controversy as to which effective relief can be granted."  *W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) (internal quotation marks omitted); *see also United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir. 1981).  On the other hand, where the district court has entered

judgment, but a party has appealed some aspect of the case, an appeal of the motion to intervene is not moot. *See Canatella*, 404 F.3d at 1109 n.1. We think that the situation here is more similar to *Canatella* than *West Coast Seafood* or *Ford*. In both *West Coast Seafood* and *Ford*, the underlying litigation had concluded; here, as IBT points out, Plaintiffs may pursue their case by filing a petition for rehearing or rehearing en banc here, or by petitioning the Supreme Court for a writ of certiorari.[6] We therefore hold that IBT's appeal is not moot in light of our reversal and will reach the district court's decision denying intervention. *See U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 190 n.1 (2d Cir. 1978) ("Because application for rehearing has been filed and the time to petition for certiorari has not expired, the case has not reached final judgment, and the issue of intervention is not moot." (citation omitted)).

To determine whether a party may intervene as of right, we employ a four-part test: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable interest" in the action; (3) the disposition of the action must as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest may be inadequately represented by the other parties. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc).

We have previously considered a motion for IBT to intervene on the side of the State to defend California's prevailing wage law. *See Californians for Safe &*

---

[6] Plaintiffs have already indicated that they intend to file a petition for rehearing en banc challenging this Circuit's FAAAA preemption precedent.

*Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189–90 (9th Cir. 1998). Because the facts of *Mendonca* are almost identical to this case, we follow its reasoning and reverse the district court's denial of IBT's motion to intervene.

In *Mendonca*, "public works contractors who provide[d] transportation-related services on publicly-funded projects" challenged California's prevailing wage laws, arguing that the FAAAA preempted the state law. *Id.* at 1185–86. We affirmed the district court's grant of IBT's motion to intervene, reasoning that: (1) IBT's motion was timely; (2) IBT's members had a "'significant interest' in receiving the prevailing wage for their services as opposed to a substandard wage"; (3) "IBT's members' right to receive the prevailing wage" would have been impaired had plaintiffs prevailed; and (4) IBT demonstrated that the State's representation of its interests may have been inadequate "because the employment interests of IBT's members were potentially more narrow and parochial than the interests of the public at large." *Id.* at 1189–90.

The district court attempted to distinguish *Mendonca* by emphasizing that we used the phrase "*receive* the prevailing wage" in *Mendonca. Id.* at 1190 (emphasis added). By emphasizing the word "receive," the district court assumed that the IBT members in *Mendonca* would not have been paid the prevailing wage if the statute were struck down. Here, on the other hand, the district court relied on the fact that many IBT members already received the prevailing wage pursuant to CBAs – regardless of the prevailing wage law. In other words, the district court concluded that the IBT members "would merely lose § 1720.9 as a *statutory backstop* to their [CBAs]."

*Mendonca* is not susceptible to the district court's narrow reading. Moreover, we are not convinced that the distinction between *receiving* a prevailing wage pursuant to statute and maintaining the statutory *right* to receive a wage is a meaningful one for purposes of assessing standing to intervene. For one, *Mendonca* makes no mention of distinguishing IBT members by whether they actually received the prevailing wage or not, and there is no discussion about whether certain IBT members were already paid the prevailing wage under CBAs. It is entirely possible that the members at issue in *Mendonca* were subject to CBAs. For another, the district court just as easily could have emphasized the word "right" in the statement "[if plaintiffs] prevailed, it would have clearly impaired IBT's members' *right* to receive the prevailing wage" and come to the opposite conclusion. *Id.* at 1190. In any event, we do not see a significant difference either way, even if the *Mendonca* intervenors were not subject to CBAs. For example, receiving a prevailing wage in the absence of a CBA might technically be different than receiving it pursuant to a contract, but for the purposes of a significantly protectable interest, we think they are indistinguishable. Even if all of IBT's members are subject to CBAs[7] that pay them the prevailing wage, a statutory right to that wage is still important and not at all speculative. CBAs are not permanent, and re-negotiating about wages from a statutory floor is certainly a much better bargaining position than starting from scratch. Maintaining the statutory floor is a significant, protectable interest for IBT.

---

[7] IBT alleges that there are times when some of its members are not protected by CBAs.

Likewise, *Mendonca* guides us on the other three elements of intervention by right. First, there is no dispute that IBT's motion was timely. Next, because IBT has an interest in the right to a prevailing wage, the district court invalidating the law clearly impaired that interest. *Id.* And, finally, IBT's interests are potentially more narrow than the public's at large, and the State's representation of those interests "*may have been* inadequate." *Id.* (emphasis added).

As such, we see no reason to depart from *Mendonca* and therefore conclude that the district court erred in denying IBT's motion to intervene as a matter of right.[8]

## 3. Preemption

The district court correctly dismissed Plaintiffs' FAAAA preemption claim. The prevailing wage law "is not 'related to' . . . prices, routes, and services within the meaning of the [FAAAA's] preemption clause." *Mendonca*, 152 F.3d at 1189; *see also Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 647–48 (9th Cir. 2014) (reaffirming *Mendonca*). Thus, preemption does not apply.

### CONCLUSION

The district court's summary judgment in favor of Plaintiffs' equal protection claim, and its denial of IBT's motion for leave to intervene as of right are **REVERSED.** We **AFFIRM** the district court's dismissal of Plaintiffs'

---

[8] Because we uphold IBT's intervention as a matter of right, we need not reach its alternative motion for permissive intervention.

FAAAA preemption claim. We **REMAND** to the district court to enter judgment consistent with this opinion.

The State Defendants and IBT shall recover their costs on appeal from Plaintiffs.